### W. S. HERNDON v. H. M. DeCORDOVA ET AL.

Decided November 18, 1899.

1. **Charge of Court—Harmless Error—Evidence Insufficient.**

Errors in the charge of court in an action of trespass to try title are harmless as to a party complaining thereof where the evidence in support of his title was insufficient to have warranted a verdict in his favor.

2. **Lost Transfer of Land Certificate—Evidence Insufficient.**

See the opinion for evidence held insufficient to establish the existence of a transfer of a land certificate claimed to have been executed and lost.

3. **Bill of Exceptions to Exclusion of Evidence.**

A bill of exceptions to the action of the court in refusing to permit a witness to answer a question must show the ground of the objection and what the answer of the witness would have been.

APPEAL from Navarro. Tried below before Hon. L. B. COBB.

*Cain & Knox* and *W. S. Herndon,* for appellant.

*Frost, Blanding & Neblett,* for appellees.

BOOKHOUT, ASSOCIATE JUSTICE.—This is a suit of trespass to try title, brought in the usual form by Henry M. DeCordova et al., as heirs of Jacob DeCordova, against W. O. Miller, T. J. Sheperd, Mrs. E. E. Myers, a feme sole, Geo. W. Speed, Mrs. Mattie Belle Allen, joined by her husband James Allen, Charles Wood, L. Polasky, W. S. Herndon, J. E. Whiteselle, and Sam R. Frost, R. S. Neblett and J. M. Blanding, composing the firm of Frost, Neblett & Blanding, to recover a tract of land in Navarro County, Texas, described in plaintiff's petition, consisting of 5,966,101 square varas, or one-third league of land. The petition was filed February 23, 1897. October 8, 1897, all of the defendants except W. S. Herndon filed their first amended original answer, in which each of said defendants disclaimed all interest in the land sued for, except that part set out by special answer; also plea of not guilty; also limitations of three, five, and ten years; also improvements in good faith.

The improvements claimed to have been made by each of said defendants are specifically alleged in said answer.

April 7, 1898, W. S. Herndon filed his answer disclaiming all interest in the land sued for except 320 acres specifically described in his said answer. Said answer also contains plea of not guilty, the statute of limitation of three, five, and ten years, stale demand, and alleges affirmatively, that as to said 320 acres said Herndon is the legal equitable owner thereof against the plaintiffs and defendants and all other persons, and prays that title to the same be adjudged to be in him in this action, and plaintiffs take nothing by their suit, and that he go hence with judgment for the 320 acres claimed by him, and all costs of suit. Said answer furthermore alleges a contract made by A. M. Dunn with E. M. Robinson, W. R. Baker, and Jacob DeCordova, by which said parties and each of them agreed and promised to give A. M. Dunn 320 acres of land for his services in locating the Wm. Murray certificate, and that said parties sold and delivered to Dunn said certificate and authorized him to act in locating the same. That said Dunn located said certificate on the land in controversy under authority from said parties and employed one Ira B. Taylor to assist in locating said land, and gave said Taylor his interest of 320 acres of land now claimed by defendant by mesne conveyances from said Dunn and Taylor.

Said answer furthermore alleges that the contract between Dunn, Robinson, and DeCordova has been lost or destroyed, and defendant is

unable to find the same among his papers and of those who would probably have it, and at all places where it might probably be found; that if there was no written contract, nevertheless Dunn had owned and held said certificate, or claimed to own it, and located it as charged.

April 7, 1898, E. M. Robinson filed petition of intervention, claiming all of said land except the 320 acres claimed by Herndon. June, 1898, plaintiffs filed their second supplemental petition excepting to the amended answers of the defendant, and alleging the disability of certain of the heirs of Jacob DeCordova in reply to the statute of limitations. October 14, 1898, defendants other than W. S. Herndon filed their answer to the petition of intervention of E. M. Robinson, pleading substantially the same as in their first amended original answer. October 14, 1898, all the defendants other than W. S. Herndon filed an answer styled an "answer to cross-bill of W. S. Herndon," in which each of said defendants disclaims all interest in the land sued for by said Herndon, except that part of same set out and described. Said pleading also contains plea of not guilty, statute of limitations of three, five, and ten years, and improvements in good faith. October 28, 1898, the case was tried before a jury and a judgment rendered in favor of all the defendants except W. S. Herndon against plaintiffs, intervener, and defendant Herndon. The judgment against the plaintiffs was an agreed judgment entered into pending the trial, and plaintiffs disposed of their title to said defendants other than Herndon, and agreed not to appeal the case. November 14, 1898, said motion was overruled and said defendant excepted in open court and gave notice of appeal.

*Conclusions of Law.*—The facts show that the 320 acres of land claimed by appellant Herndon were at the time the suit was instituted occupied by his codefendants, T. L. Shepherd, J. E. Whiteselle, L. Polasky, E. E. Myers, G. W. Speed, and Frost, Neblett & Blanding, each holding distinct portions thereof and each claiming title to the part so held. The appellant Herndon had, in a cross-bill, set up his title and prayed for a recovery of the land as against both plaintiffs and defendants, and assumed, as to the 320 acres which he claims, the position of a plaintiff as to the other defendants.

The contention of the appellees is, that even if there was error in the charge of the court, such error does not present ground for reversing the judgment, for the reason that, under the evidence, no other verdict or judgment could have beeen properly rendered in the case.

The defendant Herndon showed a regular chain of title from A. M. Dunn by mesne conveyances to Robertson and Herndon and a deed from Robertson to himself.

He alleged that A. M. Dunn had a contract with E. M. Robinson, W. R. Baker, and Jacob DeCordova, or some one of them, by which said parties, and each of them, agreed and promised to give A. M. Dunn 320 acres of land for his services in locating the William Murray certificate,

and that said parties sold and delivered to said Dunn said certificate and authorized him to act in locating the same.

The only evidence to support these allegations is the following: Ira B. Taylor, one of the parties through whom Herndon deraigns title, testified that he learned the land was vacant and mentioned the fact to A. M. Dunn, and Dunn stated that he had a certificate, and if Taylor's information was correct and he, Taylor, would assist in having it located, he, Dunn, would deed him 320 acres. Taylor supposed Dunn owned the certificate. Taylor did assist in surveying the land. He had no knowledge of any conveyance or transfer touching or respecting the William Murray certificate in favor of A. M. Dunn or any other person. He never heard A. M. Dunn say he owned the William Murray certificate. Taylor was one of the chain-carriers. Dunn died in the Confederate army in 1863. While in the army he claimed to own land in Navarro County. His reputation for integrity was good. Dunn did make a deed to Taylor for 320 acres of the land, and thereafter Taylor asserted a title to the same.

The testimony of Baker, the Commissioner of the General Land Office, showed that A. M. Dunn filed an application in the Land Office on January 1, 1862, for 620 acres of land in Navarro County by virtue of the William Murray certificate. The field notes for a survey of 1056 acres of land in Navarro County made by virtue of the William Murray certificate, and said certificate, were returned to the Land Office by Jacob DeCordova in October, 1862, and filed October 20, 1862. A patent issued by virtue of this survey for 1056 acres, and in May, 1863, was delivered to Jacob DeCordova. Jacob DeCordova made an application for the unlocated balance of this certificate, and a fractional certificate for such unlocated part—the difference between 1476 acres and 1056 acres—was issued and delivered to said DeCordova.

There is no correspondence with A. M. Dunn, Ira B. Taylor, or Jacob DeCordova in the Land Office in regard to the William Murray certificate, nor is there any contract for the locating of said certificate on file in said office, or any evidence that such was ever on file. No written conveyance to Dunn was shown. Does this evidence show a conveyance of the William Murray certificate to A. M. Dunn?

In the case of Fisher v. Ullman, 22 Southwestern Reporter, 523, it is held that the possession of a land certificate with a blank indorsement thereon prior to its location, followed by location, when unexplained, is prima facie evidence of title. It will be noted that in this case it is not shown that Dunn was ever in possession of the William Murray certificate. Taylor says he supposed he had the certificate, but he does not testify positively that he did have a certificate, or if he did, that it was the William Murray certificate. Dunn did file an application in the Land Office for 640 acres of land in Navarro County by virtue of the William Murray certificate. A survey was made for 1056, and field notes thereof were returned to the Land Office by Jacob DeCordova, to whom the patent was delivered. DeCordova received a certificate for

the unlocated part of the William Murray certificate. Dunn did convey 320 acres to Taylor.

This evidence is lacking in any probative force tending to prove a conveyance of the certificate by DeCordova, Robinson, and Baker, or either of them, to Dunn, and certainly is insufficient to support a verdict finding in favor of such a conveyance. Choate v. Railway, 90 Texas, 88.

It can not be said to raise more than a suspicion that such a conveyance once existed. Joske v. Irvine, 91 Texas, 574. Under the evidence we do not think any other verdict could have been properly rendered. The above conclusion makes it unnecessary to consider any of the assignments of error complaining of the charge of the court as given, and the action of the court in refusing special charges and the assignments relating to the action of the court in having the jury correct their verdict.

Appellant's fourth assignment of error complains of the action of the court in sustaining the objection of defendants to the testimony of Herndon as to the contents of a certain abstract of title made by Robertson at the time the land was purchased by Robertson and Herndon.

The bill of exception shows that the witness Herndon testified that Robertson acted for the firm in making the purchase, and that he was a careful lawyer, and skilled in the investigation of land titles, and that at the time of such purchase he made an abstract from the title papers showing how Dunn claimed the land. After proving the loss of said abstract and the death of Robertson, witness was asked to state from whom and how Dunn was shown to have claimed the land in controversy by said abstract merely as a circumstance tending to show his interest in the certificate and land. To this the defendants W. O. Miller and others objected, the objection was sustained, and the appellant Herndon excepted. The bill of exception does not show the ground of the objection, nor what the testimony of the witness would have been.

It is held that such a bill of exception can not be considered. Frankton v. Tiernon, 62 Texas, 92; Endick v. Endick, 61 Texas, 559; Bonart v. Waag, 61 Texas, 33; Torey v. Cameron, 74 Texas, 190; Brothers v. Mundell, 60 Texas, 240; Griffin v. Chadwick, 44 Texas, 406.

We conclude that there is no error in the judgment of the court below, and the same is affirmed.

*Affirmed.*