# SUPREME COURT OF TEXAS.

## TYLER TERM, 1859.

WILLIAM T. BLYTHE, EXECUTOR, ETC., v. JOHN SPEAKE AND
ANOTHER.*

Any positive affirmation, or representation, made by the vendor, at the time of
the sale, with respect to the subject of sale, which operates, or may operate,
as inducement; unless it be the expression of mere matter of opinion, in a
case where the vendee had no right to rely upon it; or be purely matter of
description, or identification, without fraud, and not intended as a warranty;
constitutes a warranty.

Under this rule, it was *held*, that a bill of sale, in the ordinary form of a deed
for land, granting and conveying to the vendee, his heirs and assigns, for-
ever, "a negro man, slave for life, by the name of Sam, about twenty-eight
or thirty years old, sane and healthy (except one finger stiff,) in mind and
body," constituted, on its face, a warranty of soundness; although it con-
cluded by a warranty, in terms, not extending beyond a general warranty of
title, and no otherwise imported a warranty of soundness.

Extraneous facts might establish a different conclusion.

Although it has been held, on the maxim, "*expressio unius est exclusio alterius*,"
that where this description of one quality of the thing sold, is coupled with
an express warranty of another quality, it will be presumed, that the de-
scription was not intended as a warranty, but merely as a description of the
thing; yet such a rule necessarily implies, that the thing is expressed; that
the thing expressed was intended by the parties, as a material part of the
contract, having that matter particularly in their minds.

A representation by the vendor, that the property sold, is sound, which is not
only false, but known to be so, when made, and at the time of sale; and is made

---

* This case was decided at Tyler, May 11th, 1858. The record was not fur-
nished, with the opinion, to Messrs. Hartley, and was received by us too late for
insertion in the 22d volume of Texas Reports.—REPORTERS.

for the purpose of deceiving; is a positive fraud, that will vitiate the sale, and render the vendor liable: but the representation must be of some material matter; it must have operated actually to mislead, to his injury, the party trusting to it; and it must be of such a nature, that the party deceived had a right to rely upon it, as an actual, undisputed fact.

In an action for damages, for the breach of warranty of soundness of a slave, the plaintiff set forth the general fact of unsoundness, and described the symptoms and effects of the disease, and his ignorance of its name: *Held*, to be sufficient on demurrer.

A party defrauded in a contract, has his choice of remedies. He may stand to the bargain, and recover damages for the fraud; or he may rescind the contract, return the thing bought, and recover back what he has paid.

APPEAL from Cass.    Tried below before the Hon. William S. Todd.

This suit was brought by the appellant, as the executor of the will of Amos Ury, deceased, against the appellees, John Speak and Clinton Willard, for the sum of $1000, the purchase-money of a slave, sold by Speak and Willard to Ury; and for $900 damages, for money expended for medical aid, medicines and care, in nursing the said slave; and also for $2000 damages, for the breach of warranty, and fraud of the defendants, in the sale of the slave.

The petition set forth the payment to the defendants of $1000, as the purchase-money, by Ury, at the time, and in consideration of the sale; the delivery, by the defendants, of the negro, and the execution and delivery of the bill of sale, (the material part of which is set out in the opinion.)   The petition averred a breach of the warranty contained in the deed, by reason of the unsoundness of the slave in body, at the time and before the sale; that he had been afflicted with a disease, the technical name of which was to the plaintiff unknown, but which speedily, after the sale and delivery, developed itself, causing prostration, sickness affecting the stomach, shortness of breath, swelling of the body, palpitation of the heart and difficult respiration, so that he was unable to perform any kind of service, and was confined to his bed in a sick and lan-guishing condition, from the delivery aforesaid up to the in-

stitution of the suit. That the said disease was of a chronic character, but at the time of the sale, was unknown to Ury; in consequence whereof the slave had been, and at the time of commencing the suit, was wholly valueless. The petition prayed, that the defendants might be compelled to take back the said slave, and pay to the plaintiff the said sum of $1000, the purchase-money paid as aforesaid.

The defendants filed a demurrer, and assigned as special cause, that the petition did not describe with sufficient certainty the disease with which the slave was supposed to be afflicted.

The demurrer was sustained, and the plaintiff declining to amend his petition, final judgment was rendered against him for costs.

*S. F. Mosely*, for the appellant.

*T. J. & J. H. Rogers*, for the appellees.

ROBERTS, J.—There are two questions presented in this case. 1st. Does the representation of soundness, in the bill of sale, amount to a warranty? 2d. Do the facts stated in connection with said representation, make out a case of fraud?

1. The bill of sale is drawn up in the form of a deed to land, and the parts of it material to be noticed, are as follows, to wit: "grant, bargain, sell, convey, and confirm unto Amos Ury, his heirs and assigns forever, a negro man, slave for life, by the name of Sam, about twenty-eight or thirty years old, sane and healthy (except one finger stiff,) in mind and body, to have and to hold the above bargained and sold negro slave, unto the said Amos Ury, his heirs and assigns forever; and we, the said Speak and Willard, for ourselves, our heirs, assigns, &c., and against all and every other person or persons whomsoever, do and will warrant, and forever defend, by these presents."

"Any positive affirmation, or representation, made by the vendor, at the time of the sale, with respect to the subject of sale, which operates, or may operate, as inducement, un-

less it be the expression of mere matter of opinion, in a case where the vendee had no right to rely upon it, or be purely matter of description, or identification, without fraud, and not intended as a warranty, constitutes a warranty." (Story on Sales, § 357; able opinion of Chief Justice PARKER, in Hastings v. Lovering, 2 Pick. 214.) This contains a well guarded, condensed statement of the rule, with its incidents and limitations.

Keeping in view the terms of this rule, then, what did the parties intend by inserting in the bill of sale, the description, "sane and healthy (except one finger stiff,) in mind and body?" Did they design it as a warranty of soundness, · or as a description of the negro? What they intended by it is the proper subject of inquiry. (8 Bing. Rep. 51.) Did this description not stand in connexion with what, below it, was most probably intended for a warranty of the title to the slave; it would clearly come under the rule above laid down, and which is in harmony with the decided cases. It has been held, however, that where this description of one quality of the thing sold is coupled with an express warranty of another quality, it will be presumed that the description was not intended as a warranty, but description of the thing merely. This is on the principle, "*expressio unius est exclusio alterius.*" (Story on Sales, § 358; Budd v. Fairmaner, 8 Bing. Rep. 51; Smith v. Miller, 2 Bibb, Rep. 616.)

The case of Smith v. Miller, cited from the Kentucky Reports, is very similar to the present, except that the bill of sale was a mere receipt, short, and clear in its terms. No authority is cited, nor is the reason of the thing discussed. It may be mentioned, as a matter tending to weaken the force, (if not to destroy it altogether,) of this decision, that the Supreme Court of Kentucky hold that an affirmation, or representation, at the time of sale, is not a warranty; and this, doubtless, in part, at least, influenced the decision of Smith v. Miller. (Bacon v. Brown, 3 Bibb, Rep. 35.)

This is contrary to the rule deduced by Justice STORY from

the authorities, and which Chief Justice SHAW asserted to be well settled in England. (Winsor v. Lombard, 18 Pick. Rep. 60: and see Wood v. Smith, 5 M. & R. 124.) Under the view entertained by the court in Kentucky, of a representation at the sale, the case of Smith v. Miller would have been decided not to be a warranty, even in the absence of an express warranty of the title.

The English case above cited, under the rule of *expressio unius,* &c., (Budd v. Fairmaner, 8 Bing. Rep. 51,) was a receipt for £10, "for a gray, four year .old, colt, warranted sound." Here it was decided, that the warranty applied to the soundness alone, and not to the age of the horse. As TINDALL, C. J., expresses it: "I should say, that upon the face of this instrument, the intention of the parties was to confine the warranty to the soundness, and that the preceding statement was matter of description only."

The good sense of this interpretation is most obvious. Men uniformly mention the age of a horse, in giving a description for purposes of identity, in bills of sale, estray notices, and the like. Warranting a horse's age, and particularly that of a young horse, would be a transaction so unusual, that it would not be readily presumed to have been intended to be done, where the instrument was at all doubtful. The reverse is the case now before us, in every respect. A slave is never described, for purposes of identity, by reference to the state of his health or sanity, in runaway notices, sale bills, or advertisements of any kind. He is described by his color, age, size, and if lame or manifestly deficient in any part of his person, that is almost sure to be referred to. For instance, had this instrument said, "by the name of Sam, about twenty-eight or thirty years old," *with the forefinger on the left hand stiff,* or *with a stiff finger on the right hand,* then every one would readily understand that to be description merely. It would be difficult to believe any one would endeavor to describe a negro, by saying that he might be known by being, (of course, at the date of the bill of sale,) healthy in body and sane in mind, except one stiff finger. Again, the practice of

warranting slaves to be sound in body and mind, is almost universal; so much so, that we would be surprised at not finding it in a bill of sale, if a fair price was given for the negro ; while, on the other hand, a general warranty of title is generally useless, and frequently not inserted, being usually implied in the sale. (2 Kent, Com. 478.) The party purchasing the negro, in 1854, at the price of a thousand dollars, must have had some design beneficial to himself, in taking a formal bill of sale, drawn like a deed to land. He could hardly have supposed that he was securing to himself, only the useless thing of a general warranty of title, and that, too, by an instrument in which the word " title" was omitted, (probably by mistake.) Thus it appears that the reason, upon which this English decision was so properly made, does not apply to this case. The rule,—the expression of one thing is the exclusion of the other,—necessarily implies, that the thing is expressed; that the thing expressed was intended by the parties, as a material part of the contract, having that matter particularly in their mind. Can it be, that these contracting parties had this useless thing in their mind, in making the trade, to the exclusion of the most important and usual consideration, of the soundness of the slave? We think not. The formal manner in which the instrument was drawn, being similar to a deed, was calculated to cause the parties not to scrutinize the instrument, as to the relative importance of its parts, and that is evinced by the omission of the word *title* in the warranty. Regarding merely the face of the instrument, we would understand it to have been intended to be a warranty of soundness. There may be extraneous facts, which would establish a different conclusion.

2. On the second point, it is agreed by all the authorities, that have been cited on both sides, or that have been examined, that if this representation of soundness was false, and so known to be, by Speak and Willard, and made by them to deceive, it would be a positive fraud, that would vitiate the sale, and render them liable. (Smith v. Miller, 2 Bibb, 616 ; Bacon v. Brown,

3 Bibb, 35; Baldwin v. West, Hardin, 50; Budd v. Fairmaner, 8 Bing. Rep. 51.)

There are conditions and qualifications annexed to this rule, and which are understood, however generally it may be announced in the books and decisions. Without attempting to enumerate them all, under every contingency; the representation must be of some material matter; it must have operated actually, to mislead, to his injury, the party trusting to it; it must be of such a nature, that the party deceived had a right to rely upon it as an actual, undisputed fact, &c. (Story on Sales, §§ 166, 167, 169; and 1 Story, Eq. Jur. §§ 197, 198, 199.)

The petition in this case states, that the representation of soundness of the slave was false, and known so to be, by Speak and Willard, and unknown to Ury, the purchaser; that the disease was chronic, and manifested itself shortly after the sale, with alarming symptoms, (describing them,) and by which the negro was worthless, and had been of great expense, &c.; that they concealed the fact of unsoundness from Ury, and made the representation with the intent of defrauding said Ury.

These allegations meet the rule as generally announced, most amply, and had it been further alleged, that "not having opportunity then readily to detect the falsity of said representation, and relying thereon, he was deceived thereby," &c., it is not perceived that there could have been any question as to the sufficiency of the petition in substance. (Evertson v. Miles, 6 Johns. Rep. 138, 139, &c.) The difficulty in presenting upon the record, these diversified qualifications, which may attend frauds in sales, was attempted to be obviated in England, and most of the American states, by the form of the action of deceit, and by receiving evidence under that form, of a variety of transactions, which amounted in legal effect to fraud or deceit. (6 Id. 138, 139, 140, &c.; 1 Wheaton's Selwyn, "Deceit," 647, 648, 649.) In our system of pleading, we profess to state the particular facts of each case, and not the legal effect of them. In this case, it follows almost necessarily from what was stated, taken in connexion with the subject-matter of the trade, &c.,

that Ury was deceived by relying on a statement, the falsity of which he could not readily detect; still it would always be safest to state the facts fully, and not rely upon their place being supplied, even by what any one person might deem necessary inferences from those stated. As the party may amend, this branch of the subject will not be further discussed.

The special exception which was taken to the petition, is, that the disease with which the negro man was afflicted, is not named or described in the petition. True, it is not named, for plaintiff avers his ignorance of its name, but its symptoms and effects are particularly described. This is thought to be sufficient. In the precedents of warranties at common law, it will be found that the averments of unsoundness are much more general than in this petition. (1 Chitty, Pl. 332; 2 Id. 281, n.; Wheaton's Selwyn, 181; Palmer v. Wilks, 17 Texas Rep. 105.)

"A party defrauded in a contract, has his choice of remedies. He may stand to the bargain and recover damages for the fraud, or he may rescind the contract, and return the thing bought, and receive back what he paid." (Campbell v. Fleming, 1 Ad. & Ellis, 40.)

We think the court erred in dismissing the petition. Judgment reversed and cause remanded.

Reversed and remanded.