## STATE BANK v. J. BLAKEY & Co.

Decided March 3, 1904.

**1.—Promissory Note—Want of Consideration—Innocent Purchaser—Fraud.**

Evidence considered and held to support a finding that a note given for wagons was without consideration, the wagons not being as represented, and that the indorsement of the note by the wagon company to a bank and suit thereby as an innocent purchaser was a mere fraudulent attempt to force the payment of an unjust claim, where the bank knew of such want of consideration and was protected by a bond from the wagon company indemnifying it against payment of costs, attorney fees or loss of suit.

**2.—Indorser and Indorsee.**

A bank to which a customer has indorsed a note of a third party, and which, after it has notice of the maker's defense of failure of consideration has funds of the indorser on deposit which it could apply in discharge of such indorser's liability on the note, can not enforce its collection against the maker on the plea of innocent purchaser. Van Winkle Gin Co. v. Citizens Bank, 89 Texas, 147, followed.

Appeal from the District Court of Ellis. Tried below before Hon. J. E. Dillard.

*W. H. Brown,* for appellant.

*S. C. McCormick,* for appellee.

FLY, ASSOCIATE JUSTICE.—This is a suit, instituted by appellant against appellees, on a promissory note for $1285, executed by appellees to the Stoughton Wagon Company, and indorsed by the latter to appellant.

Appellees answered that the note was given by them to the Stoughton Wagon Company of Stoughton, Wis., in payment for twenty-five wagons ordered by appellees from the wagon company; that the wagons were to have sound oak hubs, and were to be good merchantable wagons in all respects; that the wagons were received and not examined by appellees until after the note was given, when it was discovered that the hubs of fifteen wagons were of oak but badly cracked and not merchantable and of little or no value; that the wheels of the remaining ten wagons were of birch and not oak as ordered. That the agent of the Stoughton Wagon Company inspected the wheels and agreed within six weeks to replace the defective hubs with sound oak hubs. It was alleged that the wagons with the defective hubs and hubs of birch were knowingly shipped to appellees by the wagon company, and that the note was without consideration. Appellees further answered that the wagon company obtained the note through fraud and had shipped them ten wagons which had wheels with hubs of birch that were worthless in the climate of Texas, and fifteen wagons the wheels of which had hubs cracked and worthless, and that the hubs had been thickly covered with paint to conceal the defects and the material from which they were made. That the wagon company having fraudulently obtained the note, immediately

transferred it to appellant, which took the note subject to all the defenses against it; that appellant did not pay cash or anything else of value for the note, but merely gave the wagon company credit for an amount less than its face on the books of appellant. It was further alleged that if appellant did not have notice of the want of consideration for the note it knew it before and after the note was due, and had full knowledge of all the circumstances attending the execution of the note. The allegations proceeded as follows:

"'That at divers and sundry times between December 13, 1901, and December 22, 1901, and between December 13, 1901, and the date of the filing of this amended answer, and the date of the trial hereof, and on divers and sundry days of each and every month embraced within said above mentioned times and dates, there came and was in the hands of plaintiff, and there came and was in the hands of its banks, large sums of money belonging to said wagon company and subject to the disposal of plaintiff, and which might have been applied by plaintiff and in equity and good conscience should have been applied by plaintiff on said note and the payment thereof, and to the payment of the liability of said wagon company as indorser of said note; or, if not so applied, might and should have been held as security for the payment thereof; that on many of said days and dates said sums were in excess of the amount of said note, but whether more or less, each and all of said sums should have been so applied or held as far as necessary for the payment of full security of said note.

"That plaintiff and said wagon company are each incorporated under the laws of Wisconsin, and both have their residence and domicile in said State, and they reside but a few miles apart; that defendants are residents of Texas, and nonresidents of Wisconsin, and that by the laws of Wisconsin plaintiff had the right, as it knew, of collecting and enforcing the collection of said note against said wagon company as indorser thereon as if it were primarily and alone liable thereon and therefor, and without regard to the makers thereof the defendants, nonresidents of Wisconsin; that said company all the time was and now is solvent and amply able to pay and to be made said note to plaintiff; that if plaintiff had insisted on payment of said note by said wagon company or required it to pay the same, it would voluntarily have paid the same without suit, and resumed possession of said note as plaintiff well knew; but plaintiff instead of applying or holding said sums in its hands or a sufficient amount thereof on said note, and instead of so insisting and so requiring of said wagon company, utterly failed so to do; and did heretofore and before the bringing of this suit by it, in violation of its duty, enter into a conspiracy with said wagon company, inequitably and unjustly to defraud defendants and compel them to pay said note by this suit therein by plaintiff as a pretended innocent holder and purchaser thereof, and said suit being either directly or indirectly for the benefit of said wagon company and with intent to enable said

wagon company in effect to collect or have the benefit of the collection of the said note, and with intent to shut off defendants from a just and lawful defense against said note, under color of law and said suit, such defense being well known to them; and this said conspirators have done and ask to do willfully, knowingly and maliciously, and with intent to harass and oppress defendants with this suit, and compel them to pay the amount of said note and burden them with costs of suit and of attorneys fees in defending the same, and defraud them to the extent of said note and interest and said cost expenses and fees. That as a part of said conspiracy between plaintiff and said wagon company they, between the time of the maturity of the note sued on and the institution of this suit, entered into an agreement and understanding with each other, that said wagon company would make good and pay the plaintiff all attorney fees and expenses and outlays and costs of every kind that plaintiff in any manner might incur, pay or become liable for in the prosecution of this suit as plaintiff therein, and fully indemnify plaintiff in respect to the same, and, if plaintiff in this suit should fail for any reason to get judgment on the said note against defendant, or should fail to collect from them the full amount of such note that said wagon company would protect and indemnify plaintiff for such failure, deficiency or shortage and pay to plaintiff the amount of the same, and protect and indemnify plaintiff for and guarantee it against all loss, damage, expenses and cost of every kind above mentioned."

The cause was tried by the court without a jury, and judgment was rendered in favor of appellees. The facts justified the court in finding that the note was without consideration and that appellant had full notice of this fact a few days after the note became due, and of the fact that the Stoughton Wagon Company had knowingly perpetrated a fraud on appellees. The following findings of the court are also justified by the statement of facts:

"That from the date of the protest of the said note on December 13, 1901, down to the date of the deposition given herein by J. H. Palmer, vice-president and manager of plaintiff bank, on December 26, 1902, said wagon company kept an account with and in said bank, and often had balances to its credit therein; that said account was headed thus: 'State Bank in account with Stoughton Wagon Co.;' that on one side of said account was placed all deposits and credits of said company, and on the other side all cash sums paid out for or to said company by said bank; that between said dates said account consisted of several hundred items on each side; that between said dates, several hundred notes, drafts and checks in favor of said wagon company were discounted or cashed by said bank, and the amount thereof placed on the proper side of said account as funds or credits of said wagon company; that the sums so credited to said wagon company in said bank from January 1, 1902, to December 26, 1902, exceeded $170,000; that on many days during the year 1902 and after said bank had notice of said failure of consideration

of the note sued on, said company had in said bank cash credits or bal-- ances in excess of debits; on some days these cash balances were less, and on others greater than the amount of the note sued on; and on some days the account would be overdrawn; that on five several days in December, 1901, and after December 13, said wagon company had five such cash balances to its credit exceeding the amount of said note; and in January, 1902, one; in February, 1902, eight; in April, 1902, three; in May, 1902, two; in August, 1902, two; and between September 3 and September 11, 1902, four; twenty-five several cash balances in said bank greater than said note, between December 13, 1901, and September 13, 1902, and said balances severally ranging in amount from $1334.25 to $3042.75; that the credits and deposits of said wagon company in said bank were general and not special, and the excess of credits over debits shown at any time or the amount of cash balances were applicable and could have been applied by the bank to any then existing matured debt owing by said company, including the past due indebtedness of said company to said bank as indorsers of the note sued on and for the amount thereof.

"That on September 5, 1902, said Stoughton Wagon Company, in consideration that plaintiff would sue the defendant on the note sued on, executed to plaintiff a writing that said company would reimburse plain- tiff for all expenses incurred in such suit, and would promptly take up said note on demand at any time, and would assume all responsibility for attorney's acts. And directing that said note be sent to W. H. Brown, attorney at Ennis, with instruction to sue, etc.

"That said bank and said wagon company knowing of said failure of consideration, combined and conspired to the end that this suit would be brought in the name of the bank for the virtual benefit of said com- pany, with intent to cut defendant off from their defense of failure of consideration of the note sued on."

The facts in this case are strikingly similar to those in the case of Van Winkle Gin Co. v. Citizens Bank, 89 Texas, 147, in which it was decided that the bank that held the dishonored paper could not recover because it had in its possession, at the time that it learned of the dishonor of the paper, funds belonging to the indorser of the draft sufficient to pay the amount of the draft. The court said: "The case then comes to this: the indorser in good conscience should pay; the bank has its funds in its hands sufficient to satisfy the demand with a perfect right in equity to offset same in satisfaction of the bill; the pursuit of the acceptor in a foreign jurisdiction is clearly not necessary to the bank's protection, but can only serve to allow the indorser to avail himself of the protection given by law to an innocent purchaser in order to cut the acceptor off from a just defense and compel it to pay a sum of money which in equity it should not pay."

In this case the bank had the wagon company, a solvent corporation, bound as an indorser of the note, and in addition brought the suit at

the instance and request of the indorser and was given a bond indemnifying it against payment of costs, attorney's fees, or any other loss. In fact it could be concluded with reason, from the facts, that the bank was a mere figure head, and that the suit was being prosecuted for the benefit of a corporation that could not successfully prosecute it in its own right. Appellant was using its shield and defense of innocent holder to protect a corporation that had defrauded appellees, and under cover of its want of notice, prior to the maturity of the note, of the failure of consideration, was attempting to force the payment of an unrighteous claim. If the law is as stated in the case of Van Winkle Gin Co. v. Bank, the trial court was clearly right in rendering 'a judgment for appellees.

The assignments of error need not be further considered, as neither of them presents any error requiring a reversal. The judgment is affirmed.

*Affirmed.*

Writ of error refused.