FIRST NAT. BANK OF CHICAGO v. MINERAL WELLS & L. P. ST. RY. CO.

(Court of Civil Appeals of Texas.  Jan. 19, 1911.  Rehearing Denied Feb. 9, 1911.)

1. Sales (§ 124*)—Contracts—Rescission.

A buyer under an express or implied warranty who seeks to rescind and recover back the price must within a reasonable time return or offer to return the goods, unless they are wholly worthless.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 303–312; Dec. Dig. § 124.*]

2. Carriers (§ 59*)—Bill of Lading—Bona Fide Purchaser.

A seller under a warranty drew a draft on the buyer for the price, and with the bill of lading indorsed it to a bank in the ordinary course of business, and the bank gave the seller credit on its books for the amount of the draft, less the usual discount.  The bank had no notice of any noncompliance with the contract on the part of the seller.  Held, that the bank was an innocent purchaser for value, and it did not become a warrantor of the quality and quantity of the goods described in the bill of lading.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 179–190; Dec. Dig. § 59.*]

3. Carriers (§ 59*)—Bill of Lading—Bona Fide Purchaser.

The bank forwarded the draft and bill of lading to its correspondent for collection, with instructions not to surrender the bill of lading until the draft was paid.  The correspondent collected the draft in full, and remitted to the bank a part thereof.  After the payment to the correspondent and before the transmission thereof to the bank, the latter was notified of the failure of the seller to comply with the contract of sale, and at that time the bank had in its possession funds belonging to the seller more than sufficient to satisfy the demands of the buyer for the loss it had sustained.  The bank obtained judgment against its correspondent for the amount it retained.  Held, that the bank was not liable to the buyer for the loss sustained, and the seller could not claim the amount due to the bank from its correspondent; there being nothing to impeach the good faith of the transaction as between the bank and the seller.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 179–190; Dec. Dig. § 59.*]

4. Appeal and Error (§ 880*)—Questions Reviewable — Party Entitled to Complain.

Where a defendant did not appeal from a judgment against him and a codefendant, the court on codefendant's appeal could not disturb the judgment so far as it affected defendant,

though the evidence was insufficient to sustain any judgment against him.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3584–3590; Dec. Dig. § 880.*]

Appeal from District Court, Palo Pinto County; W. J. Oxford, Judge.

Action by the Mineral Wells & Lakewood Park Street Railway Company against the First National Bank of Chicago and others.  From a judgment for plaintiff, defendant named appeals.  Reversed in part.  Affirmed in part.

W. H. Gross and Smith, Turner, Bradley & Powell, for appellant.  J. T. Ranspot and Penix & Eberhart, for appellee.

HODGES, J.  On the 26th day of January, 1907, the Mineral Wells & Lakewood Park Street Railway Company of Mineral Wells, Tex., entered into the following contract with the Block-Pollak Iron Company of Chicago, Ill.: "Dallas, Texas, 1/26/07. Messrs. Dismuke & Smith, Mineral Wells, Texas— Gentlemen: As per our offer of the 24th and conversation with the writer over the telephone to-day, we now beg to confirm sale to you of two miles of first quality 35 lb. relaying steel tee rails, including sufficient, necessary angle splice bars weighed in, at $38.75 per gross ton (2240 lbs.) delivered f. o. b. cars Mineral Wells, Texas. We guarantee to make delivery within thirty days from date, unless delayed by causes beyond our control; and also to furnish only such rails as will pass Robt. W. Hunt & Co.'s inspection —which calls for rails that are straight, free, from kinks, curves, laminations or battered ends.  All rails to be properly drilled in each end with necessary splice bars to match.  90 per cent of the rails to be 30 foot lengths with the usual, not to exceed 10% of shorter lengths down to 23 feet.  Terms: Sight draft with shipping documents attached.  This letter of agreement signed in duplicate will constitute a contract between us.  By J. R. Cohn.  Accepted: Mineral Wells & Lakewood Park St. Ry., by Marcus M. Bright, Sec. & Treas."  When the rails designated in the above memorandum were shipped, the Block-Pollak Iron Company drew its sight draft on the Mineral Wells & Lakewood Park Street Railway Company (hereinafter called the railway company) for the sum of $4,136.36, the amount of the purchase price, payable to the order of the drawer.  The draft, with the bill of lading attached, was indorsed by the Block-Pollak Iron Company and transferred to the First National Bank of Chicago, Ill.  The indorsement was in the following language: "Pay to the order of the First National Bank of Chicago.  [Signed] Block-Pollak Iron Co."  The First National Bank of Chicago (hereinafter referred to as the Bank of Chicago) placed the amount of the draft, less

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

the usual discount, on its books to the credit of the Block-Pollak Iron Company, subject to be checked against at any time, and forwarded the draft, together with bill of lading, to the First National Bank of Mineral Wells, Tex., for collection. (The last-named bank will be hereinafter referred to simply as the Bank of Mineral Wells.) A letter of instruction accompanied the draft, directing the Bank of Mineral Wells not to surrender the bill of lading till the draft was paid. On March 27, 1907, the draft was paid in full by the railway company by means of its check drawn on the Bank of Mineral Wells by Marcus M. Bright, secretary and treasurer of the railway company. On April 3, 1907, the Bank of Mineral Wells remitted by New York exchange to the Bank of Chicago the sum of $2,623 of the amount collected by it from the railway company on the draft. This left, after deducting some expenses and charges, a balance of $1,500 still in the hands of the Bank of Mineral Wells. In a letter which accompanied the remittance the latter bank gave as a reason for not sending the entire amount that it had been garnished "by the W. & M. Co." in a suit pending in the district court of Palo Pinto county, and it held the $1,500 to protect itself and subject to the order of the court. We gather from the briefs of counsel that a short time after paying the draft and securing possession of the bill of lading the railway company filed a suit in the district court of Palo Pinto county against the Block-Pollak Iron Company for damages on account of the inferior quality of some of the rails shipped, and at the same time procured the issuance of a writ of garnishment against the Bank of Mineral Wells. These proceedings do not appear in the record of the evidence in this case. The following is all that appears in the statement of facts concerning that garnishment: "Plaintiff introduces a garnishment writ which showed that the First National Bank answered that it had $1,500, being the remainder left out of the $4,136.36 which was paid by the Mineral Wells & Lakewood Park Street Railway Company." It does not appear from the record at whose suit, or for what purpose, this garnishment was sued out. At the March term, 1908, of the district court of Palo Pinto county, the Bank of Chicago recovered a judgment against the Bank of Mineral Wells for the sum of $1,500, the amount of the collection withheld. We gather from the record that the railway company had occupied in this suit the position of a party defendant, and had been by the court permitted to withdraw therefrom after the parties had announced ready for trial and, after the court had heard all of the testimony. On April 15, 1908, more than a year after the payment of the draft, the railway company, appellee in this appeal, filed an amended original petition in the district court of Palo Pinto county in which it makes the Block-Pollak Iron Company and the First National Bank of Chicago, the appellant in this appeal, parties defendant. From the judgment rendered in that suit this appeal is prosecuted.

It is stated in briefs of counsel that this amended original petition was the means of making the appellant for the first time a party to the original suit of the appellee against the Block-Pollak Iron Company. After the formal allegations stating the incorporation and residences of the Block-Pollak Iron Company and of the Bank of Chicago, the amended petition sets up substantially the following facts: For cause of action it alleges the making of the contract with the Block-Pollak Iron Company of January 26, 1907, and its breach by that company in failing to ship goods up to the standard purchased. It is claimed that 53 of the rails were crooked, kinked, curved, and laminated, so that they were unfit for use, for which damages are claimed in the sum of $340.80; that one-half of the remainder were crooked, curved, kinked, and laminated to such an extent as not to be in compliance with the terms of the contract, and damages for this item are placed at $1,500. It is further claimed that the rails were not "drilled in" as provided for by the contract, and that 30 per cent. of the splice bars were missing or crooked and broken, for which still other damages are claimed in the sum of $81.50. The payment of the draft drawn by the Block-Pollak Iron Company and the reasons for making such payment were set out in minute detail. It is averred that the rails were shipped C. O. D., and that no means of inspection was afforded till after payment of the draft, and not till then was it discovered by the plaintiff that the goods were not up to the grade contracted for, that the payment of the purchase price was obtained by the fraud of both of the defendants, and they are charged with having adopted this particular method of securing payment before breach of the contract could be discovered by the plaintiff. It is also charged that the appellant had notice of the failure of the Block-Pollak Iron Company to comply with its contract at the time it acquired the draft drawn for the purchase price, or that, if it did not have such notice, then it did have full knowledge of all the circumstances before it came into possession of the funds paid on the sight draft. It is further averred that at all times between the date on which plaintiff paid the draft and the filing of that amended original petition the appellant had in its hands, as a bank of deposit, funds belonging to the Block-Pollak Iron Company in excess of $1,500, "which might have been applied by said defendant, and in equity and good conscience should have been applied to the payment on said sight draft." It is argumentatively insisted that, by reason of the fact that appellant had in its possession funds belonging to the

Block-Pollak Iron Company which it might have appropriated to the satisfaction of the unpaid balance of $1,500 withheld by the Bank of Mineral Wells, the plaintiff is now entitled to the latter fund. It is further charged that the method adopted by the defendants was the outgrowth of a conspiracy to defraud plaintiff by a pretended transfer of the draft, and that the collection was in reality for the Block-Pollak Iron Company. The petition concludes as follows: "That the said $1,500 now in possession of the First National Bank of Mineral Wells is a part of the $4,226 paid by plaintiff on the sight draft aforesaid, and that said $1,500 in truth and in fact should belong and does belong to this plaintiff as a part of its debt and damages aforesaid, and does not in any sense belong to the defendant the First National Bank of Chicago, but is being held by it fraudulently for the defendant the Block-Pollak Iron Company. That the plaintiff believes that the First National Bank of Mineral Wells is about to pay to the First National Bank of Chicago the said sum of $1,500, and plaintiff says that if such payment is made that it will lose its debt against the defendants herein to its damage in the said sum of $1,500. It therefore asks that a temporary writ of injunction be granted against the First National Bank of Mineral Wells enjoining it from making the payment aforesaid until the issues of this case can be heard and determined. Wherefore it asks that citation issue to defendants as required by law and upon hearing hereof it have a judgment against them for the sum of $1,999.80 and costs of suit. That a temporary writ of injunction be granted staying the First National Bank of Mineral Wells from paying the $1,500 to the First National Bank of Chicago, and for general and special relief."

There was also attached to the petition an application for a writ of garnishment against the Bank of Mineral Wells upon an affidavit charging that this bank was indebted to and had in its hands funds belonging to the appellant and the Block-Pollak Iron Company. It does not otherwise appear whether or not the Bank of Mineral Wells was made a party to this suit. It filed no answer and we cannot say from the reading of the petition that an effort was made to make it a party. The Block-Pollak Iron Company filed no answer. The appellant Bank of Chicago answered by general and special exceptions, a general denial, and specially alleged the purchase and ownership of the draft drawn by the Block-Pollak Iron Company on the appellee, its collection by the Bank of Mineral Wells, the failure of the latter to remit $1,500 of the sum collected, and the subsequent recovery of a judgment for that sum against the Bank of Mineral Wells. A copy of the judgment is attached and referred to as a part of the answer. It is also alleged that the appellee was a party to the suit in which that judgment was rendered, and withdrew from the same when the court announced its judgment.

After the conclusion of the evidence, under a peremptory instruction from the court, the jury returned the following verdict: "We, the jury, find for plaintiff against all of the defendants the $1,500 fund held by the First National Bank of Mineral Wells." Upon that verdict the court entered the following judgment: "It is therefore ordered, adjudged, and decreed by the court that the Mineral Wells & Lakewood Park Street Railway Company do have and recover jointly and severally of the defendants Block-Pollak Iron Company and the First National Bank of Chicago, Ill., the said $1,500 fund now held by the First National Bank of Mineral Wells, Tex., for all of which execution may issue." From that judgment the Bank of Chicago alone has appealed.

The facts adduced upon the trial were substantially, and in many instances literally, as we have stated them in the foregoing summary. There was no evidence offered in support of the charges of fraud and collusion between the appellant and the Block-Pollak Iron Company, or of notice on the part of appellant of any failure of consideration in the contract between the appellee and the Block-Pollak Iron Company, till after the payment of the draft by the appellee. The unique character of this judgment, when viewed in the light of the pleadings and the evidence, has made the task of determining the proper method of disposing of this appeal somewhat perplexing. On account of its variance from the only relief legitimately authorized by the nature of the action, and the entire absence of any proof to warrant a decree of that kind, we were at first constrained to regard it as an incomplete adjudication of the issues involved, and one over which we could not assume jurisdiction on appeal. But, treating the judgment as in effect a denial of all the relief asked for by the plaintiff, except that which was specifically granted, it may be regarded as final, within the meaning of the statute regulating appeals. Whatever doubts we entertained upon this question have been resolved in favor of that course best calculated to settle the controversy and end the litigation; and we therefore set aside the order formerly made dismissing this appeal, and will now dispose of the case upon its merits.

The judgment rendered is susceptible of one of two interpretations: It either merely determines that the appellee is entitled to a particular fund held by the Bank of Mineral Wells, or adjudges that the plaintiff in the suit is entitled to recover that amount of money from the defendants personally. If we treat it as the award of a particular fund, and not as the adjudication of a personal liability against the appellant and its codefendant, then, in order that it may be sustained, there must be something in the

pleadings and the evidence to establish on the part of the appellee a right, or title, to this fund, or some interest commensurate with the recovery obtained. The facts relied on for this purpose are that the "fund" held by the Bank of Mineral Wells was a part of the proceeds of what was paid as the purchase price of the goods delivered by the iron company under its contract, and that there had been a partial failure in the consideration. The right to follow this money as proceeds of that payment would depend upon many conditions not present in this case. Whatever may be said of the sufficiency of the averments in the petition, the facts proved failed to show any fraud chargeable to either of the defendants in the suit. There was nothing more than the simple breach of a contract to furnish steel of a certain standard in quality. Again, the right to follow proceeds as such in cases like that here under consideration would depend upon the right of the complaining party to rescind the contract. "If the vendee of goods in cases where there is either an express or an implied warranty would rescind the sale and recover back the purchase money, he must, within a reasonable time return the goods, or offer to return them, unless, indeed, the goods are wholly worthless, in which latter case the vendee is not obliged to return them, or offer to return them, before he can sue and recover back the price, or defend against an action for the price." Brantley v. Thomas, 22 Tex. 270, 73 Am. Dec. 264; Blythe v. Speake, 23 Tex. 429; Scalf v. Tompkins, 61 Tex. 477. Clearly this proceeding is not an action based upon a rescission of the contract with the iron company, and the judgment cannot be sustained upon principles applicable to one of that kind.

The appellee having elected to retain the goods and sue for damages for a breach of the warranty, the right to subject that "fund," or, more correctly speaking, the debt due from the Bank of Mineral Wells, would depend upon the personal liability of the owner of the fund, or the one to whom the debt was due and payable. The party who made the warranty is the one who is responsible for the breach. The evidence shows that the appellant bank acquired the ownership of the draft by indorsement in the ordinary course of business, and paid a valuable consideration therefor by giving the indorser credit on its books for the amount of the draft less the usual discount. It is uncontroverted that appellant then had no notice of any noncompliance with the terms of the contract on the part of the iron company. Under those circumstances, appellant was an innocent purchaser for value. In accepting the draft with the bill of lading attached it did not become a warrantor of the quality and quantity of the goods therein described. Blaisdell v. Bank, 96 Tex. 629, 75 S. W. 292, 62 L. R. A. 968, 97 Am. St. Rep. 944. Counsel for appellee insist that appellant is liable to the extent of this fund by reason of the fact that after payment was made to the Bank of Mineral Wells, and before its transmission to appellant, the latter was notified of the failure of the consideration, and at that time had in its possession funds belonging to the iron company more than sufficient to satisfy the demand of the appellee for the loss it had sustained. In support of that proposition, we are referred to the case of Bank v. Blakey, 35 Tex. Civ. App. 87, 79 S. W. 331. That case was decided by the Court of Civil Appeals upon the authority of Van Winkle Gin Co. v. Citizens' Bank, 89 Tex. 147, 33 S. W. 862. The facts disclosed in the latter case show that the suit was instituted by the indorsee of a draft which had been presented and accepted by the drawee, but that, when payment was demanded, it was refused upon the ground that there had been a failure of consideration. Suit was instituted by the indorsee against the acceptor, and the plea of failure of consideration was interposed by the defendant. In reply to that plea the plaintiff bank alleged that it was a purchaser of the draft for value and without notice. The question was whether such a plea was available. The Supreme Court held that it was, but based its ruling upon these further facts: It was shown that the indorsee was a bank receiving deposits of money, and at the time the draft was dishonored it had funds in its hands belonging to the indorser more than sufficient to pay the face of the draft, and which it might at its option have applied to the extinguishment of the indorser's liability thereon. The court holds that the bank had the undoubted right to say to the indorser, "You have indorsed to us a paper which, as between you and the acceptor, the latter ought not to pay. We have money belonging to you in our hands sufficient to satisfy your contract of indorsement now due, and we elect to avail ourselves of our equitable right to apply same as an offset and in settlement of your contract and return to you the paper rather than pursue the innocent acceptor in another jurisdiction, especially since such pursuit cannot possibly be necessary for our protection. We will not use the shield thrown around us by law solely for our protection as innocent purchasers as a subterfuge to aid you in enforcing through us an unjust demand." Proceeding further, the court uses this language: "Such a position would have been unassailable in morals and in law. The bank, however, elected the contrary. The case then comes to this: The indorser in good conscience should pay. The bank has its funds in its hands sufficient to satisfy the demand, with a perfect right in equity to offset same in satisfaction of the bill. The pursuit of the acceptor in a foreign jurisdiction is clearly not necessary to the bank's protection, but can only serve to allow the indorser to avail himself of the protection given by law to an

innocent purchaser, in order to cut the acceptor off from a just defense and compel it to pay a sum of money which in equity it should not pay. Under these circumstances, with knowledge of the failure of consideration probably at the time of filing the original answer, but certainly when the depositions of its officers were taken as above stated, it presses its claim to judgment upon its claim of innocent purchaser in a suit instituted at the instance and expense of the indorser. While expressly waiving its equitable right to offset the deposit conferred upon it by law for its protection, and which appears in this case to have been adequate to its complete protection, it invokes the application by the court of another equitable principle, not for its protection, but for the sole and evident purpose of aiding the indorser to obtain an undue advantage over the acceptor. We are of the opinion that under these circumstances, and for such a purpose, the bank was not entitled to the protection afforded by law to an innocent holder, and that as between it and the acceptor the deposit should be offset against the bill." The facts of that case are radically different from those involved in this. There the draft had been accepted, but not paid, and the liability of the indorser still existed. Here the draft had been paid and the indorser discharged before the holder acquired notice of the failure of the consideration. If through the transfer of the iron company the appellant acquired the ownership of the draft, that necessarily carried with it the title to whatever was paid on it, and a payment to the Bank of Mineral Wells, its collecting agent, was, in so far as the parties to the instrument were concerned, a payment to the appellant, and operated to discharge the indorser. In the case referred to the Supreme Court rested its holding that the plea of failure of consideration was available against the indorsee, upon the ground that at the time of the dishonor, and of notice of the defense urged, the latter was in an attitude to easily reimburse itself out of funds in its hands belonging to the indorser. It was also apparent that the bank was being used merely as an agent of the party liable for the breach of the contract. It is true that in this case at the time this defense was made known to the appellant it had in its hands funds belonging to the indorser sufficient to satisfy the appellee's demand for damages, but at that time the liability of the indorser had ceased, and the remedy of the indorsee in the case referred to was not available in this. Neither was there any evidence of the charge that appellant acted for the iron company in making this collection.

There is nothing in the record to impeach the bona fides of the transaction between the appellant and the iron company. The record shows that some time prior to being made a party to this suit appellant had recovered a personal judgment against the Bank of Mineral Wells for the failure to pay over the very "fund" referred to in the judgment. The relation of those two banks to each other then, if not before, became that of creditor and debtor. The attempt to subject this so-called "fund" to the satisfaction of the claim of the appellee for damages for the breach of contract by the iron company was nothing more than an effort to reach a debt due to a party in no way responsible for those damages.

From the evidence contained in the record there was no warrant for either a personal judgment against the appellant bank, or for one against its debtor in any proceeding akin to garnishment. In view of the testimony, in which there appears to be practically no conflict, we think the court should not only have withheld the peremptory instruction given in favor of the appellee, but should have directed a verdict for the appellant. The judgment of the district court will therefore be reversed, and judgment here rendered for the First National Bank of Chicago. While the evidence is wholly insufficient to sustain any judgment against the iron company, there being no appeal by it, in so far as that defendant is affected, the judgment will be undisturbed.