COMMERCIAL SECURITY CO. v. COLLINS et al. (No. 1462.)

(Court of Civil Appeals of Texas. Amarillo. Jan. 29, 1919.)

1. DEPOSITIONS ⬤=44—EXAMINATION—LEADING INTERROGATORIES.

In action on notes by indorsee, leading interrogatories to president of payee company *held* justified on account of witness' unwillingness and his hostility to defendant makers.

2. DEPOSITIONS ⬤=64(3) — RESPONSIVE ANSWER TO INTERROGATORY.

In action on notes by indorsee, answer of president of payee company to interrogatory *held* responsive; therefore properly permitted to be read to jury.

3. BILLS AND NOTES ⬤=525—FUNDS OF PAYEE IN HANDS OF INDORSEE — SUFFICIENCY OF EVIDENCE.

In action on notes by security company to which payee company had indorsed, evidence *held* sufficient to support jury's finding that plaintiff had on deposit with it sufficient money or funds belonging to payee company to pay notes after they were dishonored.

4. BILLS AND NOTES ⬤=353—FUNDS OF PAYEE IN HANDS OF INDORSEE—DUTY TO APPLY ON INDEBTEDNESS.

If indorsee of notes on dishonor held on deposit funds of payee company, which had indorsed notes, more than sufficient to pay them, indorsee was under duty to apply funds on obligation created by indorsement of notes, as well as by payee's written guaranty of payment, for which purpose percentage of face value of paper was retained by indorsee; effect of contracts being that payee, indorser, and guarantor agreed that, if makers did not pay on presentment, then it would.

5. BILLS AND NOTES ⬤=353 — FUNDS SECURING INDORSED PAPER—OBLIGATION OF INDORSEE.

Where consideration for notes failed, and indorsee of payee company had notice thereof while in possession of funds of payee company reserved to secure notes, it was under duty to satisfy its claim against makers from funds of payee company, and makers are not liable to it.

Appeal from District Court, Potter County; Hugh L. Umphres, Judge.

Suit by the Commercial Security Company against J. W. Collins and another. From judgment for defendants, plaintiff appeals. Affirmed.

Kimbrough, Underwood & Jackson, of Amarillo, for appellant.
S. E. Fish, of Amarillo, for appellees.

HUFF, C. J. On April 13, 1917, the Commercial Security Company, appellant, sued J. W. Collins and C. R. Austin, as copartners, under the firm name of Collins-Austin Drug Company, on four negotiable notes, each in the sum of $200, dated February 14, 1916, payable to the order of Partin Manufacturing Company, due, respectively, 3, 4, 5, and 6 months after date, signed by Collins-Austin Drug Company, and indorsed to the security company by Partin Manufacturing Company before maturity and on the 21st day of February, 1916, and also sued for $7.70, protest fees, alleging that the notes were protested for nonpayment. For defendants' answer we copy from their brief:

"That on or about the 14th day of February, 1916, defendants were approached by George A. Baker, representative of Partin Manufacturing Company, stating that his company was engaged in inaugurating trade campaigns of merchants to increase trade, explaining that the campaigns had been signally successful elsewhere. A number of young people were to be interested in the sale of coupons, which could be exchanged at the store of defendants for merchandise. That the person selling the greatest number of coupons was to be given a prize of an automobile or $360 in gold. As a part of the contract Partin Manufacturing Company guaranteed that the sale for the succeeding 12 months would increase not less than $15,000, allowing $5,000 for natural increase. Partin Manufacturing Company as a

⬤=For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

part of the contract agreed to send its bond for $800 to a local bank as a guaranty, also a certificate of deposit for $400 that it would deliver the automobile or pay the $360 in gold; also agreed to pay defendants 5½ per cent., on every dollar the sales fell short of $15,000. That this contract was executed contemporaneously with and as a part of the notes sued on. The trade campaign was a failure, consideration for the notes failed, Partin Manufacturing Company failed to make the certificate of deposit, and defendants were compelled to pay successful contestant the sum of $360 in gold.

"Partin Manufacturing Company obtained the notes by fraud; subsequently made some sort of purported transfer to the Commercial Security Company of the notes, who had been handling its notes for years; knew the character of the business of the Partin Manufacturing Company and the history of these notes. That between the 14th day of May, 1916, the maturity of first note and its protest and the date of the trial, plaintiff had money and assets belonging to the Partin Manufacturing Company, subject to disposal of plaintiff, which could and in good conscience should have been applied to the payment of the notes, or held as security for the payment of the same, but plaintiff, instead of so applying or holding said sums and securities in its hands, failed to do so, but entered into some sort of a conspiracy with Partin Manufacturing Company to defraud defendants and compel them to pay said notes to plaintiff as a pretended innocent purchaser, but that said suit was really for the benefit of Partin Manufacturing Company, with intent to shut off defendants from a just and lawful defense."

The trial court submitted the case on special issues, but instructed the jury generally as to the manner in which their verdict should be rendered, and among other things told the jury:

"If there are controverted issues that are not submitted for your determination, then the same has already been determined by the court."

The first issue is: "Did plaintiff, after its notes were dishonored by defendants, have on hand sufficient amount of money or funds belonging to Partin Manufacturing Company to pay such notes or any part thereof?" The jury answered: "Yes."

Second: "If you answer the next preceding issue in the affirmative, then what amount did plaintiff have on hand?" The jury answered: "$1,280."

On these issues, upon motion of the appellees, the court rendered judgment for them. The notes sued on were as alleged, in the petition, for $200 each, payable to the order of Partin Manufacturing Company, and dated February 14, 1916, payable in 3, 4, 5, and 6 months, repectively, and are indorsed by the Partin Manufacturing Company by G. H. Partin, president, and H. D. Barry. When these notes fell due and as they fell due, they were presented to the appellees for payment, which was refused, and the notes protested. The notes show that they were indorsed when protested by the Commercial Security Company, and were sent by Chicago banks to banks in Amarillo, who received them from the Chicago banks, and notice of protest was given to all the indorsers on the notes, Partin Manufacturing Company, Barry, and the Commercial Security Company, as well as the banks sending the notes to the Amarillo banks. The evidence is sufficient to show that the notes were a part of the contract as set out in the appellees' answer, and that the consideration therefor was the obligation of the Partin Manufacturing Company set out in the contract, and is also sufficient to show that the consideration for the notes had wholly failed. The facts are also sufficient to show that at the time appellant came into possession of these notes they had no notice of the defects in the notes or the failure of consideration. The facts also show that the notes, when signed, were attached to the contract, of which they were a part, and the paper was so perforated that the notes could be detached, and the contract provided that the Manufacturing Company should have a right to detach them. The Manufacturing Company, on the 21st of February, 1916, sold these notes, together with others, the face amount of all the notes being $6,400, and that the agreed price was $0.9238½ on the dollar, or the total, $5,912.60, for the notes. At the time there was a certificate of sale, showing the notes, together with others and the amount of the indebtedness owing, and this certificate was attached to a contract of sale, reciting the consideration paid, by which Partin Manufacturing Company guaranteed the prompt payment in full to appellant of the notes specified. The appellant referred the notes to its legal department for an opinion, and also investigated the financial rating of the parties making the notes, and on the 24th day of February, 1916, the manufacturing company executed a receipt for the money, which receipt is itemized, showing the payments as follows:

| 2/24/16. | Cash | $1280.00 |
| 2/24/16. | " | 1132.60 |
| 2/24/16. | Check | 1000.00 |
| 2/24/16. | " | 2500.00 |
| | Total | $5912.60 |

The facts show that the appellant had a general knowledge that the manufacturing company was in the advertising business, but the witnesses testify that they knew nothing of the methods of the business or the details. It is shown that appellant first commenced buying notes from the manufacturing company some time in July, 1915, and had purchased in all about $200,000 worth of notes or securities. After the protest of the notes the evidence shows that the manufacturing company sent a blank note for renewal of the first note protested. This the appellees declined to sign, complaining that the manufacturing company had not complied with its contract, and that the advertising cam-

paign was a failure, and asking for a representative to assist in the campaign. The manufacturing company sent a Miss Jack, but it appears that she only tried to collect the notes or to secure a renewal of the notes, appellees declining to pay or to renew the notes, and subsequently wiring the manufacturing company that the campaign was a failure, and that they had not complied with the contract, and would not pay the notes. The manufacturing company sent three notes for renewal afterwards, which the appellees signed, but added to each note, "subject to the terms of the contract." These notes were not accepted by the manufacturing company. The appellees did not learn until about the 16th of October, 1916, that the appellants owned or claimed the notes, at which time they wrote the company that they would not pay the notes; that the consideration had failed, and the manufacturing company had not complied with its contract, etc. The appellant answered this that they knew nothing about their contract; did not care anything about it, and that they wanted their money, etc. Thereafter suit was filed. The president of the manufacturing company, G. H. Partin, testified by deposition, among other things, that the Commercial Security Company usually required them to carry a balance of 20 per cent. of the notes that they sold them; that he did not know what amount, if any, of this 20 per cent. was retained when the notes were sold. That he did not remember whether the $1,280 cash left with the appellants represented the 20 per cent. or not, as they changed the plans several times. There is some testimony to the effect that there have been some suits involving notes purchased from the manufacturing company, prior to February 21, 1916, and some suits since that time on such notes, in which the appellants had seen the answers of the contestant makers, but the evidence indicates generally that the notes were paid without suits or controversy.

[1, 2] Appellant's first assignment is to the action of the court in not sustaining objections to direct interrogatory to G. H. Partin, and the answer thereto, and in permitting the same to be read to the jury. The interrogatory is as follows:

"Referring again to the $6,400 transaction, mentioned in the thirty-sixth interrogatory, I will ask you to state if it is not a fact that the $1,280 cash item mentioned in the receipt that you executed on that occasion to the Commercial Security Company is not the 20 per cent. that was retained by the Commercial Security Company purchasing the paper of Partin Manufacturing Company that you had in mind when testifying before the bankruptcy court? As a matter of fact, this $1,280 was not paid in cash on February 24, 1916."

The answer is:

"The Commercial Security Company usually requires us to carry a balance of about 20 per cent. of the notes we sold them. I am not familiar with the transaction had with them, because it has been so long ago. The Commercial Security Company usually required us to carry a certain amount, and I don't know whether this $1,280 cash was left with them or not, as we changed plans several times in selling papers."

The objection urged is that the question was leading, and that that part of the answer that, "the Commercial Security Company usually required us to carry a balance of 20 per cent. of the notes we sold it" was objected to for the reason that the question asked the witness with reference to specified transaction, and the answer stated that they usually did, but did not remember this transaction. The interrogatory is leading in its character, but it is manifest from reading this entire record that the witness was an unwilling one, as well as hostile to appellees, and we think, under the circumstances shown in this record, that appellant had the right to ask a leading question. We are not inclined to believe that the answer of the witness is not responsive. The witness refused to answer certainly that the $1,280 was the 20 per cent. required, for the reason that he did not remember, but did state that it was the custom to retain the 20 per cent. on the face of the notes purchased by appellant. This witness, at the time he was testifying, excused himself for not testifying positively to this transaction, and giving a statement of the account with appellant and his company, on the grounds that he did not have the books of the company before him, but that they were with the referee in bankruptcy. This witness further testified in answer to another interrogatory, it appears from the record:

"I do not know what amount, if any, of the money that the Commercial Security Company had paid me since May 14, 1916, was from the 20 per cent. retained when the notes were sold."

This last statement of the witness we think implies the fact that 20 per cent. was retained for the purpose of securing these notes at the time they were negotiated to appellant, and under this record, as it shows what difficulty appellees had in obtaining the testimony, we do not feel that we would be justified in striking out the interrogatory and answer thereto, and the assignment will be overruled.

The second assignment of error is taken to the action of the court in refusing to instruct a verdict for the appellant.

[3, 4] The third, fourth, fifth, and sixth assignments are based on the appellant's objections to the submission of issues Nos. 1 and 2, submitted to the jury, on the ground that the court should have peremptorily instructed a verdict for appellant, and further because there was no evidence authorizing the court to render a judgment in favor of

defendants on any verdict they might return, and that there was no evidence authorizing the jury to find that plaintiff had on deposit sufficient money or funds belonging to the manufacturing company to pay the notes, after the notes were dishonored. We have reached the conclusion that there is sufficient evidence supporting the finding of the jury. It is shown that in all the dealings between appellant and the manufacturing company with reference to the purchase of over $200,-000 worth of paper, it was the custom to retain 20 per cent. of the face of the paper to secure its payment. While Partin, the president of the company, did not testify that this per cent. was retained in this particular transaction, but sought to excuse himself from testifying definitely thereto, because he did not have access to the books, he nevertheless does not testify that it was a transaction out of the usual or customary method. In looking to the receipt, we find on the same day, February 24th, two cash items, one for $1,280, exactly 20 per cent. of the face of the notes sold, and another for $1,-132.60. Also on that date there was shown by the receipt two checks, one for $1,000 and another for $2,500. Both checks were made payable to the order of the manufacturing company and upon the same bank. One check was indorsed by the manufacturing company, and the other does not appear to have been indorsed by the manufacturing company, but has indorsed on the back of the check, "Place to the credit" of the manufacturing company. Mr. Smith, the secretary and treasurer, whose deposition was taken, also failed to give the manner in which the account was kept between the two companies, on the ground that he was then away from Chicago, and had no access to the books. The president of the company does not give the method of keeping the books of the parties, and all that appellees were able to get was that which plaintiff furnished by the receipt, and other instruments in writing. and the testimony of Mr. Partin. The only answer the witnesses for appellant, the secretary and treasurer and president, gave was that at the time and before purchasing the notes appellant had no notice of the failure of consideration for the notes, or of the consideration for the notes. Of course when they purchased the notes there had been no failure. The question made by the pleadings was, Did they have notice after they purchased? And did they have funds which were held by appellant to secure the notes and others? On this vital issue they remained silent. The pleadings charged them with having such funds, as well also as did the deposition of Partin. Prima facie we think the evidence shows that appellants retained $1,280, with which to secure the notes sued on, together with others,

which amount is more than sufficient to pay the notes herein. If they held such sum, under the holdings in this state, it is made appellant's duty to apply such funds on the obligation created by Partin Manufacturing Company's indorsement of the notes, as well as by its written guaranty of payment and for which purpose the 20 per cent. was retained. The effect of these contracts was that the indorser and guarantor agreed, if the makers of the notes did not pay them when presented for payment, that it would, and, having the funds in its hands for that purpose, equity would require it to so apply the funds if so held. Appellant was not required to go into a foreign jurisdiction to sue the makers before holding the guarantor and the indorser or apply the funds which it held for that purpose. Knowledge of the facts in the transaction between the two companies all being in possession of appellant and the manufacturing company, appellant could not remain silent when appellees showed facts charging it with funds which ought to be applied on the debt for which there was no consideration. The evidence produced by appellees and the failure to disprove the same or to show that the funds were not then in hand, or had been dissipated before it had notice of the failure of consideration for the notes, we believe authorized the finding by the jury that it was in possession of $1,280 belonging to the Partin Manufacturing Company for the purpose of securing the notes. Van Winkle Gin Co. v. Citizens' Bank, 89 Tex. 147, 33 S. W. 862; State Bank v. J. Blakey & Co., 35 Tex. Civ. App. 87, 79 S. W. 331; Simmons v. Hodges (C. C. A.) 250 Fed. 424.

[5] The trial court evidently found that the appellant had notice of the infirmities in the notes after their dishonor and while they were in possession of the funds reserved by appellant to secure these notes and if the jury's findings are true the court was authorized to make the finding it did.

We believe the case should be affirmed.