J. W. MARSHALL, d/b/a Marshall Pipe & Supply Company, Appellant,

v.

M. O. RIFE, Jr., Appellee.

No. 16686.

Court of Civil Appeals of Texas.

Fort Worth.

Dec. 10, 1965.

Rehearing Denied Jan. 14, 1966.

———◆———

Prothro & Sellers and Lee Sellers, Wichita Falls, for appellant.

Vincent Stine, Henrietta, for appellee.

MASSEY, Chief Justice.

M. O. Rife, Jr. purchased from J. W. Marshall, d/b/a Marshall Pipe & Supply Company, a "string" of used oilfield pipe to use to drill into an old "hole" and set and cement in place for use in attempting to rejuvenate an oil well. In order to produce oil from the pipe after it was set and cemented and ready for use it was neces-sary that a pumping tool be operable within the pipe in an up-and-down motion so that the oil would be brought upward to the surface where it would be trapped and drawn off. In oil field parlance such a tool is called a "swab", and the actual operation of the tool in the accomplishment of the pumping operation is called "swabbing".

In the state of the record it is to be considered factually established that Marshall was fully acquainted with the purpose to be accomplished by Rife by use of the pipe, and also with the manner of accomplishment. At and prior to the consummation of the transaction of sale and purchase Marshall knew that a "swabbing" operation would be performed. For such to be performed Marshall knew that the "swab" would necessarily have to be lowered down the pipe to the lower portion thereof where the "swabbing" could take place; being furthermore aware that a uniformity of interior dimensions of the many sections of pipe in the "string" would be essential to the running of the "swab" down the pipe. In the "piston-like" operation of the "swab" it is fatal to successful "swabbing" if the oil being pumped slips by its sides and back to the reservoir from which it is attempted to be pumped.

Pipe which stands up under tests of "drifting" and "testing" will "swab". We may disregard the matter of whether the pipe in question had been "tested" for there is no contention that it had materiality in the litigation. The matter of "drifting" is of consequence and importance. A section of pipe which has been "drifted" will "swab", for its interior dimensions are formed or milled so that the "swab" will move up and down in a semi-snug fit against the interior walls of the pipe, thus enabling the pumping operation to lift the oil from the reservoir.

In addition to Marshall's knowledge of the purpose for which Rife purchased (with honest opinion and belief on the part of Marshall that the pipe was fit and suitable therefor), Marshall affirmatively rep-

resented that all the pipe sections had been "drifted". A "drifting" operation is the running through of a tool having close tolerance to the interior dimensions of a pipe section to make sure that there is no obstruction.

Rife knew that Marshall had obtained the pipe by a transaction with a third party. He also knew that the pipe was transported directly to the site—where Rife intended to and did use it—from the storage yard of said third party. We do not believe the fact material, though it is obvious that Marshall's representation to Rife that the pipe had been "drifted" was made because the third party had so represented that fact to Marshall. This Marshall relied upon, without any examination made to confirm it. Rife knew that this was the situation, but was content to rely on Marshall's representation without independent investigation on his own part.

Before accepting the pipe, when it was delivered at the wellsite, Rife's representative looked down each section of pipe to determine that it was open; however, the interior dimension of the pipe was supposed to have been 2½ inches, and the evidence satisfactorily established that the only way to determine that such was true as to the pipe delivered was by "drifting" it. It was proved that it is neither usual nor customary for a purchaser to "drift" pipe when it is delivered at a wellsite.

Rife used the pipe to drill into the old "hole", cemented it in place, and did all things expected to be necessary to prepare it for "swabbing". At that point it was found that the "swab" would not go very far down the string of pipe. As already indicated, it is necessary to position the "swab" at the lower end of the string of pipe in order to pump the oil. Furthermore the "swab" must have the close tolerance heretofore mentioned.

Many things were tried in order to get the "swab" down the string of pipe to the point where the well could be pumped.

Ultimately it was determined that sections of the pipe had to be milled out by a machine tool. In performing the milling operation it became apparent that the interior of some of the sections of pipe had been coated with a plastic compound, while the interior of other sections had not been so coated. It was referred to in the evidence as a "mixed string" of pipe. It was discovered that a point would be struck where plastic would "mill out" of the entire section of pipe, to be followed by a section where the milling tool would pass on down the pipe without hindrance to another section where plastic would be "milled out". By this method the lower part of the pipe was reached. Finally the "swab" was inserted and put into operation. This made a well which pumped oil, giving Rife what he expected to have without necessity of milling the pipe. Obviously plastic inside some of the sections had reduced interior dimensions below 2½ inches. Such could not be true of pipe which had been "drifted". Thus the evidence established that some of the sections had not been "drifted".

Rife deducted from Marshall's bill the amount reasonably and necessarily expended in milling operations, being the expense requisite to make the pipe useful to accomplish the purpose intended and understood by both parties. This the trial court (also sitting as the fact-finding agency) found to have been proper. Judgment was in accord.

■ In view of Marshall's representation to Rife that the pipe had been "drifted", relied upon by the latter in the purchase, we believe that Marshall became liable on the theory of express warranty. In this connection we take notice of the fact that it was not reasonable to expect that the inspection Rife's agent made at time the pipe was delivered did or should have revealed to him the fact that the pipe was not as represented, to wit: pipe which had been "drifted". See 50 Tex.Jur.2d, "Sales", p. 440, et seq., "Express Warran-

918

ties", § 143, et seq.; Blythe v. Speake, 23 Tex. 429 (1858).

Furthermore, in view of the fact that both parties were fully acquainted with the use to be made of the pipe we believe that Marshall became liable on the theory of implied warranty. The doctrine of *caveat emptor* finds one of its exceptions in the implied warranty by a seller of the fitness or suitability of good purchased for a known purpose. See 50 Tex.Jur.2d, "Sales", p. 460 et seq., "Implied Warranties", and especially § 159 at p. 468, "Fitness or suitability for buyer's purpose". In this connection we again take notice of the inspection Rife's agent made of the pipe at time of the delivery and that it would not be reasonable to expect that he should have discovered that it was in fact unsuitable for the intended purpose.