HEARD NOVEMBER TERM, 1879.

CASE No. 794.

J. N. ROBSON v. H. C. MILLER.

</div>

1. Where, in an action for the purchase money of acid phosphate, the defence is failure of the article to conform to the quality warranted, material represented by defendant in his testimony to be the substance sold, may be exhibited to the jury, although defendant admits that the seller's directions for composting were not wholly complied with.

2. When one undertakes to manufacture for another an article of known value and use, it is an implied condition of the contract that it shall be fit for the use to which it is commonly put.

3. When a merchant introduces, under his own name and guarantee, an acid phosphate, stating that it will produce certain results when composted, his right to recover the value of certain bags of it sold by him cannot be made to depend solely upon the correctness of the chemical analysis printed upon labels and attached to the bags by the manufacturer.

4. The words, "fertilizers, compounded of the purest materials," "of the highest standard," "introduced under my own name and guarantee," amount to an express warranty of good results from the article described, as a fertilizer.

Before HUDSON, J., Anderson, September, 1878.

This was an action by plaintiff against the defendant to recover the price of eight tons of Robson's acid phosphate. The defendant alleged that he purchased under plaintiff's representations, copying the statements contained in plaintiff's circular—that the acid phosphate proved to be utterly valueless and wholly unsuited for preparing a compost manure, that it injured the fertilizing properties of his cotton seed, &c.—and claimed damages.

While the defendant was on the witness stand he exhibited lumps, some of which, he testified, were taken from the compost heaps, others from the field. To this plaintiff objected, as not pertinent to the issue, and, his objections being overruled, excepted. Witness did not, in every particular, follow directions of the circular, but only varied when experience had demonstrated an improvement. To all the bags were attached tags, upon which were stated their chemical constituents. The circular of the plaintiff was as follows:

"CHARLESTON, S. C., November 16th, 1875.

"Having been engaged for twenty years in the guano trade, with eminent success, I deemed it advisable to introduce fertilizers under my own name and guarantee. I have made arrangements to have prepared a guano under my inspection and control, called Robson's cotton and corn fertilizer. This guano is of the highest standard. It contains, among other valuable ingredients, three per cent. of ammonia, one and one-half per cent. of potash, and fourteen per cent. of available phosphate.

"I have also prepared for me a compound acid phosphate of the highest standard. These fertilizers are compounded of the purest materials, and are manipulated and tested under the supervision of Dr. St. Julien Ravenel, of this city, whose name gives a warrant for its high character and adaptation for our soil." [Then comes prices, etc.]

"I take this occasion to return my thanks to those who have so largely patronized the fertilizers heretofore offered by me, and in soliciting their favorable attention to another. I pledge my

best efforts to meet a continuance of confidence by keeping the highest standard of fertilizers adapted to cotton and corn."

There was a great deal of other testimony, but it is not material to the points made and decided here.

The plaintiff requested the presiding judge to charge—

1. That where an article of a certain and definite nature is to be manufactured, the seller can, in no sense, be considered as warranting it to be appropriate to the use to which the buyer intends to apply it, whether the seller be informed of such intention or not.

2. If the article sold failed to accomplish the results for which the defendant bought it, and there was no fraud on the seller's part, and both buyer and seller relied on the same source of information, to wit, the analysis of the chemist, the plaintiff is entitled to recover.

3. If the improper and unskillful manipulation of the defendant, that is to say, the thickness of the alternate layers of cotton seed and acid phosphate in the compost heaps contributed to, or caused the results complained of, the defendant is himself responsible for these, and the plaintiff must recover.

4. As matter of law, whenever there is an express warranty, no implied warranty can arise. The express warranty, in this case, applies only to the constituent elements of the acid phosphate and the supervision of Dr. Ravenel. If the proof offered by the defendant fails to show that these elements and this supervision were wanting, as alleged, there was no breach of warranty, and the plaintiff must recover.

The first the judge refused, saying it would only apply when the vendee gives the directions.

The second he refused, because, as he said, the chemist, in this case, was the plaintiff's agent and not the defendant's.

The third he charged as correct.

The fourth he modified by extending the express warranty to the good results as a fertilizer, as well as to the ingredients.

He had previously charged that the plaintiff had contracted to sell the defendant an acid phosphate of good quality, and valuable as a fertilizer for corn and cotton, which, when com-

posted with cotton seed in a particular manner, would produce a good result, to all of which the plaintiff excepted.

The jury found a verdict for the defendant for $51.

Plaintiff moved for a new trial, which being refused, he appealed to this court.

*Mr. B. F. Whitner*, for appellant.

*Mr. A. T. Broyles*, for respondent.

January 7th, 1880. The opinion of the court was delivered by

WILLARD, C. J. This was an action for the sale of goods, consisting of an article intended as a fertilizer, described as "Robson's Acid Phosphate." The defence was a counter-claim in the nature of a recoupment, on the ground of the failure of the article sold to conform to representations made by the plaintiff and intended as a warranty.

On the trial a verdict was rendered for the defendant, and the plaintiff now brings before us certain exceptions, alleging error in the rulings of the Circuit judge, and asks a new trial. These exceptions will be separately considered. The first exception is to certain testimony and the exhibition of certain material represented to be the substance sold to the defendant by the plaintiff, and exhibited in connection with the testimony of the defendant given in his own behalf. The object of exhibiting the substance appears to have been to enable the jury to form a more intelligent judgment of the nature of the commodity sold. It is not material to inquire what inferences could be properly drawn from the appearance of the material thus exhibited; but there can be no doubt that it was competent to show to the jury what was claimed to be evidence offered by the condition of the material itself, as to whether it was in conformity to the character ascribed to it by the vendor. The plaintiff states as a reason for this objection that it appeared by the defendant's testimony that he had not followed the directions of the plaintiff in treating the substance, preparatory to its use as a fertilizer, and, therefore, the condition of the material, as exhibited, was not to be attrib-

uted to any defect in its condition at the time of sale, but to the improper treatment of the defendant. All this was matter for the consideration of the jury and is not pertinent to the question of the competency of the testimony. The jury had a right to know what was done and its effect upon the material and the exhibition of the material and the statement of the mode ,in which it was actually treated, had a clear bearing on the facts put in issue. This exception should be overruled.

The remaining exceptions are to the refusals of the Circuit judge to charge propositions submitted by the plaintiff for that purpose, and for alleged errors in the matters actually charged by him. The first proposition of the requests to charge is as follows:

"That when an article of a certain or definite nature is to be manufactured, the seller can, in no sense, be considered as warranting it to be appropriate to the use which the buyer intends to apply it, whether the seller be informed of such intention or not."

It may be remarked that this purports to be a rule of implying warranty where no express warranty or representation is given, and, as such, is inappropriate to the case in hand, which is altogether one of express warranty, or, as the plaintiff views it, of misrepresentation. But the proposition is, in itself, unsound in the form stated, inasmuch as it embraces cases as applied to which it would lead to conclusions contrary to law. It is equivalent to saying that when one undertakes to manufacture for another an article that has a known value and use, it is not an implied condition of the contract that the manufacturer shall produce an article fit for the use to which such article is commonly put. This is equivalent to saying that a baker is not bound to produce bread that can be eaten. The proposition was, therefore, untrue, and was properly refused.

The second proposition submitted for charge was as follows:

"If the article sold failed to accomplish the results for which the defendant bought it, and there was no fraud on the seller's part, and both buyer and seller relied on the same source of information, to wit, the analysis of the chemist, the plaintiff is entitled to recover."

This proposition tended to present the question as depending wholly upon the nature and quantity of the constituent chemical elements of the commodity at the time of sale, whereas the question of the value of the commodity depended upon the fact whether it would *act* in a particular manner when composted with certain other materials in the manner prescribed by the plaintiff, so as to make a valuable fertilizer. A circular, issued by the plaintiff, was in evidence. It was for the jury to say whether the statements of that circular constituted the basis of the purchase by the defendant. In this circular the plaintiff stated that he had deemed it advisable to introduce fertilizers— using his own words—" under my own name and guarantee." The circular does not give the chemical composition of the "Acid Phosphate." The plaintiff, in his testimony, states the value of his article to depend on the fact that when composted in a particular manner with certain materials it retains the ammonia evolved, which would otherwise escape, in a form suitable for application to plants. He alleges that his " Acid Phosphate " is not a manure in itself, but that it becomes such under the treatment prescribed for it.'

It appears by the plaintiff's own case that the question at issue was not confined to the inquiry whether the article sold had, at the time of sale, certain chemical constituents of a certain character and in certain quantities.

The proposition under consideration was defective in tending to withdraw the attention of the jury from the material features of the case, and confine them to the narrow question whether such constituents were present at the time of sale. It might well be that, as it regards the analysis of the article in its condition at the time of sale, both buyer and seller might be compelled to rely on the representations of a chemist, but that fact, even in the absence of fraud on the part of the seller, could not, in itself, become decisive of the plaintiff's right to a verdict, as it was made to be by the plaintiff's proposition.

The fourth request was charged, subject only to the modification of " extending the express warranty to the good results of a fertilizer, as well as to the ingredients." This modification, as

well as the remainder of the charge, is in substantial harmony with what has been already held herein, and the appeal should be dismissed.

                                                **Appeal dismissed.**

McIver, A. J., concurred.