RUMELY PRODUCTS CO. v. MOSS.
(No. 5434.)

(Court of Civil Appeals of Texas. Austin. March 4, 1915. Rehearing Denied April 21, 1915.)

1. FRAUD ⊜⟶52—BUYER'S ACTION FOR DAMAGES—EVIDENCE.

In an action for damages on account of a seller's false representations in the sale of a thresher for threshing a crop of peas, evidence that the buyer wrote and mailed a letter to the seller complaining of defects in the thresher, which letter he did not then have, was admissible as showing his good faith and diligence in notifying of the defects.

[Ed. Note.—For other cases, see Fraud, Cent. Dig. § 48; Dec. Dig. ⊜⟶52.]

2. SALES ⊜⟶85—NOTICE OF DEFECTS—SUFFICIENCY.

Under a written contract for the sale of a thresher, stipulating that notice of defects should be given the seller by registered letter, the requirement of registration was intended to secure prompt notice to the seller, and if it re-

ceived timely, notice by an unregistered letter there was a substantial compliance with the contract.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 236–238; Dec. Dig. ☞85.]

3. FRAUD ☞58—SALE OF THRESHER—NOTICE OF DEFECTS—SUFFICIENCY.

In an action for damages from a seller's false representations as to a thresher, the buyer's uncontradicted evidence that he had written and mailed a letter to defendant notifying of defects was sufficient to show that such written notice had been given to the seller.

[Ed. Note.—For other cases, see Fraud, Cent. Dig. §§ 55–59; Dec. Dig. ☞58.]

4. FRAUD ☞50—BUYER'S ACTION FOR DAMAGES—BURDEN OF PROOF.

In an action for damages from misrepresentations in the sale of a thresher, on the ground that the seller did not deliver the machine contracted for, it was not necessary to prove notice to the seller of defects, as required by the written warranty.

[Ed. Note.—For other cases, see Fraud, Cent. Dig. §§ 46, 47; Dec. Dig. ☞50.]

5. APPEAL AND ERROR ☞1050 — HARMLESS ERROR — ADMISSION OF IMMATERIAL EVIDENCE.

In such case the court's admission of proof of the immaterial fact that the buyer had given notice of defects as required by the warranty was not ground for reversal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1068, 1069, 4153–4157, 4166; Dec. Dig. ☞1050.]

6. APPEAL AND ERROR ☞1051—HARMLESS ERROR—ADMISSION OF EVIDENCE.

In such action, where it was clearly shown that a person whom the buyer had requested to notify the seller of defects was the seller's agent, error, if any, in allowing the buyer to testify that such person had said he was defendant's agent, was harmless.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4161–4170; Dec. Dig. ☞1051.]

7. FRAUD ☞32—BUYER'S WARRANTIES—ACTION FOR DAMAGES.

A buyer, who by false representations is induced to purchase machinery sold under a written contract containing certain warranties, is not restricted to an action on the written contract, but can sue on the antecedent fraud by which the contract was procured.

[Ed. Note.—For other cases, see Fraud, Cent. Dig. § 28; Dec. Dig. ☞32.]

8. FRAUD ☞59—BUYER'S ACTION FOR DAMAGES—MEASURE.

In an action against a seller for damages on account of false representations made in sale of thresher for the purpose of threshing peas, as known to the seller, on the ground that it would not thresh peas and that the part known as the pea-thresher attachment was not delivered until the entire crop was lost, the measure of damages would be the price of the peas and the expense the buyer incurred in attempting to thresh them with the machinery furnished, less the expense he would have incurred in threshing and marketing them, what he could have sold the unthreshed peas for, and whatever benefit he derived from the crop in the fertilization of his land.

[Ed. Note.—For other cases, see Fraud, Cent. Dig. §§ 60–62, 64; Dec. Dig. ☞59.]

9. FRAUD ☞60—BUYER'S ACTION FOR DAMAGES—ELEMENTS OF COMPENSATION.

In such case, the buyer was not entitled to recover the ordinary expense of threshing, preserving, and marketing the peas, since he would have been subject to that expense, even if there had been no misrepresentations as to the thresher furnished by the seller.

[Ed. Note.—For other cases, see Fraud, Cent. Dig. § 65; Dec. Dig. ☞60.]

10. FRAUD ☞50—BUYER'S ACTION FOR DAMAGES—BURDEN OF PROOF.

In such case, the burden was upon the buyer, and not upon the seller, to furnish the proof necessary to enable the court to deduct the ordinary and necessary expense of threshing and marketing the crop of peas from the damages claimed, based on a total loss of the crop and the money spent in trying to operate the thresher.

[Ed. Note.—For other cases, see Fraud, Cent. Dig. §§ 46, 47; Dec. Dig. ☞50.]

Appeal from District Court, Hamilton County; J. H. Arnold, Judge.

Action by T. H. Moss against the Rumely Products Co. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

Burgess, Burgess, Chrestman & Bundridge, of Dallas, Eidson & Eidson, of Hamilton, and Sadler & Cobb, of Gatesville, for appellant. Langford & Chesley, of Hamilton, for appellee.

KEY, C. J. Appellee brought this suit against appellant for damages on account of false representations alleged to have been made by appellant in negotiating a sale of a thresher purchased by appellee for the purpose of threshing and preparing for market a crop of peas. In his petition the plaintiff alleged, in substance, that the defendant, at the time of the purchase of the machinery, had notice of the fact that the plaintiff was buying it for the purpose of threshing a crop of peas to be grown for the market upon 55 acres of land. It was alleged that the plaintiff believed and relied upon the representations made by the defendant's agent to the effect that the machinery sold and contracted for would properly thresh peas; that these representations, in point of fact, were untrue; and that the machinery would not thresh peas, and, as a result of its failure to do so, the plaintiff lost his entire crop of peas, etc. He filed a trial amendment, in which he alleged, in substance, that the machinery known as the pea attachment, and which the defendant contracted to deliver to him, was never in fact delivered until the plaintiff's entire crop of peas was destroyed.

The defendant's answer contained a general demurrer, and admission of some and a denial of other facts alleged in the plaintiff's petition. It admitted that it was a corporation; that it sold to the plaintiff a certain Gaar-Scott separator, with pea attachment. It denied making the representations set out in the plaintiff's petition, and pleaded the terms of a written contract, and alleged that the only representations made by the defendant were contained in that contract, in a warranty clause therein, and averred that its liability was limited by the terms of the written contract, and that the plain-

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

tiff had not performed the obligations resting upon him under the contract, and therefore was not entitled to recover damages. It also denied that it had any notice of the fact that the plaintiff contemplated planting and raising 55 acres of peas, or any other quantity, to be sold upon the market, and was purchasing the machinery for the purpose of threshing any such quantity of peas.

The case was tried by the court without a jury, and judgment rendered for the plaintiff for $1,728; and the defendant has appealed.

The first and second assignments of error complain of the rulings of the trial court in admitting certain testimony. Under those assignments appellant submits this proposition:

"In an action for breach of warranty of machinery, where the written warranty provides the method for giving notice to the warrantor of defects in the machinery, the method so provided must be followed, and no other method will avail."

In that proposition, and in many other assignments and propositions submitted in appellant's brief, appellant treats the case as a suit upon a written warranty, and a sufficient answer is that the plaintiff does not base his suit upon a written warranty, but upon false representations by which he was induced to enter into the contract, and upon the further allegation that the defendant failed to deliver the machinery contracted for.

The other proposition submitted under the two assignments referred to is that secondary evidence is not admissible to prove the contents of a writing until a proper excuse is shown for failure to produce the writing itself. This relates to the action of the court in permitting the plaintiff to testify that he had written a letter to the defendant, notifying it that the pea attachments had not been received, and that he would soon be ready to thresh his peas, and also that he requested J. F. Chenault to write to the company and request them to forward the pea attachment at once. The objections to the testimony, as disclosed by the assignments of error, were as to the letter written by the plaintiff, because the written contract required notice to be given by registered letter, which the witness stated was not done, and because it was not shown that the defendant had received the letter, and no predicate had been laid for the introduction of secondary evidence.

[1-3] As to the letter written by Chenault, it was objected to because it was not shown that he was the defendant's agent, and because that method of giving notice was not in accordance with the requirements of the written contract, and because it was not shown that the Rumely Products Company, of La Porte, Ind., had received any letter from Chenault on behalf of the plaintiff. As the plaintiff was not suing upon the written contract, we have already held that he

was not bound by its terms, and therefore he was not required to give notice in the manner therein stipulated. The plaintiff testified that he mailed the letter he wrote to the defendant at La Porte, Ind., which is shown to have been its headquarters or home office. It is reasonably certain from the testimony that the plaintiff did not have the letter and could not place it in evidence, and therefore we think it was competent for him to testify that he wrote it, as tending to show his good faith and his diligence. Besides, while the written contract stipulated that notice should be given by registered letter, we think the requirement that the letter should be registered was intended for the purpose of securing prompt notice to appellant; and therefore, if it received timely notice by a letter that was not registered, we think that method of notice would be a substantial compliance with the contract. The defendant offered no evidence tending to show that the letter referred to was not received, and therefore we think the evidence offered by the plaintiff was not only admissible, but was sufficient to show that written notice had been given to the defendant.

[4, 5] However, if we are correct in our holding that the plaintiff was not bound by the written contract stipulating for notice, then he was not required to give any notice, but could maintain his suit upon the theory upon which it was predicated in his petition, and that was the failure of the defendant to deliver the machinery contracted for. The stipulations in the written contract which were invoked by the defendant do not apply to the failure of the defendant to deliver the machinery contracted for, but undertake to prescribe the duties and obligations of each party after the machinery had been delivered. Hence we hold that it was not necessary for the plaintiff to prove that he had given the defendant written notice concerning the machinery. That testimony was not objected to as being immaterial, and if such objection had been made we would not reverse the case merely because the court may have permitted proof of that immaterial fact.

As to the letter written by J. F. Chenault, addressed to the defendant at Dallas, Tex., we think it is sufficient to say that the proof shows that, at the time that letter was written, Chenault was appellant's agent, and it was received at Dallas, Tex., by appellant's general manager.

[6] The third and fourth assignments complain of the action of the trial court in permitting the plaintiff to testify that J. F. Chenault told the witness that he was appellant's agent and solicited his patronage. Under those assignments appellant submits the proposition that agency cannot be proved by the declarations of the agent, when the principal is not shown to have acquiesced therein. The correctness of that proposition may be conceded; but, as Chenault's agency was

clearly proved by his own testimony upon the witness stand, we decline to hold that those assignments show reversible error.

What has already been said disposes of appellant's fifth, sixth, seventh, eighth, and tenth assignments of error.

Appellant's eleventh assignment complains of the action of the court in permitting the witness to testify as to the market value of the peas, concerning which we deem it sufficient to say, without setting out the testimony in full, that in our opinion the witness qualified himself to testify as to market value.

The fourteenth assignment is in the main a recapitulation of assignments and contentions already urged, and that assignment is overruled.

[7, 8] It is earnestly insisted in appellant's brief that the measure of the plaintiff's damages is limited and restricted by the written contract of warranty, and that the plaintiff was not entitled to recover the market value of his crop of peas, even though as a result of appellant's breach of the contract he may have lost the entire crop. Controverting that contention, counsel for appellee submits the following counter proposition:

"Where a plaintiff, by false representations, was induced to purchase machinery which was sold on written contract containing certain warranties in a suit against the seller for damages, the plaintiff is not restricted to an action on the written contract, but can base his suit on antecedent fraud by which the contract was procured."

In support of that contention Jones v. George, 61 Tex. 345, 48 Am. Rep. 280, Cobb v. O'Neal, 2 Sneed (Tenn.) 438, Blythe v. Speake, 23 Tex. 429, and 14 Cyc. 29 and 30, are cited. We sustain the contention urged on behalf of appellee, and hold that the measure of damages in this case is not limited to the remedies stipulated in the written contract; and we also hold that if, at the time the contract of sale was made, the defendant had notice of the fact that the machinery contracted for was intended to be used for the purpose of threshing a crop of peas, which the plaintiff contemplated growing for the market, and that such machinery was necessary for that purpose, then, if the plaintiff is entitled to recover, the measure of his damage will be the market price of the peas and the expense he incurred in attempting to thresh them with the machinery that was furnished, less the expense he would have incurred in threshing, preserving and marketing them, and less whatever amount, if any, he could have sold the unthreshed peas for, and whatever benefit, if any, he derived from the pea crop in the way of fertilization of his land. In Cobb v. O'Neal, supra, the court said:

"A purchaser of goods, who has been induced to make the purchase by false and fraudulent representations by the seller as to the quality of the property, may maintain an action of deceit, notwithstanding the contract contains a warranty, and it can make no difference that the warranty is in writing."

It is a well-settled rule of law that one who breaches a contract must respond in damages for such injuries as should have been contemplated as a result of such breach. In Jones v. George, supra, the plaintiff purchased from the defendant, who was a druggist, a certain article supposed by each party to be Paris green, and it was known to the seller that it was being purchased for the purpose of using it upon a growing cotton crop, to kill certain insects which were about to destroy the purchaser's crop of cotton. In that case there was no express warranty, but the court held that there was an implied warranty that the thing sold was Paris green; and it was there held that the liability of the seller was as broad under a breach of the contract as if he had expressly warranted the substance which he delivered to be Paris green; and if it was not that article, and as a result thereof the purchaser lost his cotton crop, the measure of damages would be the value of the crop as it stood just before it was destroyed by the worms, with the cost of the compound used, and the further cost of the preparation and application to the cotton, with interest on the money thus expended, with the qualification that no recovery could be had for any loss which the planter might have avoided with ordinary care and reasonable expense. In the celebrated case of Hadley v. Baxendale, 9 Exch. 341, the rule as to measure of damages for breach of contract is thus stated:

"We think the proper rule in such a case as the present is this: Where two parties have made a contract, which one of them has broken, the damages which the other ought to receive, in respect to such breach of contract, should be either such as may fairly and substantially be considered as arising naturally— i. e., according to the usual course of things— from such a breach of contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties at the time they made the contract, as the probable result of the breach of it."

In Jones v. George, supra, after quoting that rule, the Supreme Court said:

"This rule has been applied substantially in many cases by the courts of America, and in the case of Calvit v. McFadden, 13 Tex. 326, the spirit of the rule was thus announced by Wheeler, J.: 'The difficulty, if not impossibility, of laying down any precise and definite rule of general application in respect to what may be recovered as consequential damages, is shown by Mr. Sedgwick in his review of the cases upon this subject in his treatise on the Measure of Damages. He quotes the language of the Supreme Court of Louisiana that "the damages which a party may recover on the breach of a contract are those which are incidental to and caused by the breach, and may reasonably be supposed to have entered into the contemplation of the parties at the time of the contract" (13 La. 404); and this, he concludes, is the clearest and most definite line that can be drawn in respect to such damages. * * * And to apply the rule of the Louisiana court, which seems free from objection, it must have appeared also that the loss was incidental to and caused by

the breach of the contract, and was such as may reasonably be supposed to have entered into the contemplation of the parties contracting.' In the last edition of Mr. Sedgwick's work on the Measure of Damages, 104, 122, he adopts the rule thus stated by the Louisiana court as 'perhaps the clearest and most definite rule that can be framed in this perplexing matter.' The rule in Louisiana seems to be established by the Code of that state (1 Sedgwick, 103; Williams v. Barton, 13 La. 410); and it and its modifications are taken from the Code Napoléon, 1149, 1150, which in turn are taken from Pothier on Obligations, Nos. 159, 160, who asserts that the rule is as old as the Roman law. We believe this to be a correct rule, and, tested by it, what is the liability of the appellee?"

The opinion then proceeds to cite and discuss quite a number of decisions, and concludes with announcing the rule applicable to that case as hereinbefore stated.

In I. & G. N. R. R. Co. v. Pape, 73 Tex. 501, 11 S. W. 526, the plaintiff sued for damages on account of injuries to a growing crop, brought about by an overflow, which overflow, he alleged, was caused by the negligent construction of a railway track. In that case, in considering the measure of damages, the court said:

"It seems to us that as a general rule the most satisfactory means of arriving at the value of a growing crop is to prove its probable yield under proper cultivation, the value of such yield when matured and ready for sale, and also the expense of such cultivation as well as the cost of its preparation and transportation to market. The difference between the value of the probable crop in the market and the expense of maturing, preparing, and placing it there, will in most cases give the value of the growing crops with as much certainty as can be attained by any other method. But proof of the additional amount of cotton which the plaintiff would have made but for the overflow, and the value of such cotton when ready for market, without evidence as to the expense of cultivating, gathering, preparing it for, and placing it in market, did not show the value of the crop at the time of the injury, and hence did not afford the proper means of measuring the plaintiff's damage."

So we regard it as settled law in this state that the measure of damages, whether the action be founded upon a breach of contract, deceit, or other wrongful conduct, includes reasonable and fair compensation, not only for the injuries which necessarily and usually result from such wrongful conduct, but also for such consequential injuries as the person sought to be held liable should have contemplated as a probable or possible result of his wrongful conduct.

[9, 10] The two cases last referred to, though not entirely analogous to the case at bar, tend to support the proposition just announced. They also have application in support of appellant's contention under its two last assignments of error, which are numbered 15 and 16, to the effect that the court erred in rendering judgment for the plaintiff for the full value of the peas sued for, the expense incurred in testing the machinery, and the money paid to the defendant. We have reached the conclusion that these assignments must be sustained, and the judgment reversed. The plaintiff alleged in his petition that his crop of peas was worth $1,650, and that they were a total loss; that he paid the defendant $30 for the pea attachment which was delivered to him, and that it was of no value; and that he expended $60 in trying to operate it, making his total damages $1,750. The court rendered judgment in his favor for $1,728. No findings of fact were filed, but the testimony renders it reasonably certain that the court allowed $1,650 as the market value for which the peas would have sold, $28 paid for the worthless pea attachment, and $50, the amount expended in testing it, making a total of $1,728. It is manifest that if appellant had complied with the contract in every respect, and the peas had been threshed in a satisfactory manner, the plaintiff would have been at the expense of threshing them, doing whatever was necessary to preserve them, and carrying them to market and selling them; and therefore his crop of peas would not have netted him the amount awarded by the trial court. In other words, it is quite manifest that the plaintiff was not entitled to recover the entire amount awarded him by the trial court, and, it being equally manifest that some deductions should have been made in order to arrive at the correct measure of damages, we think the burden was upon the plaintiff, and not upon the defendant, to furnish the proof necessary to enable the court to make such deductions. In addition to the deductions just referred to, there was some testimony tending to show that the plaintiff might have diminished his damage by selling or using the unthreshed peas for hog feed; and if it should appear upon another trial that, by the exercise of reasonable diligence, he could have done so, the amount of his recovery should be diminished to that extent.

It is also contended by appellant that the fact that the peas were grown upon the plaintiff's land and permitted to remain there and rot should be taken into consideration, upon the theory that the soil was thereby fertilized and benefited. If the defendant had complied with its contract, and the plaintiff had sold his peas upon the market, he would have still had whatever benefit had accrued to his land by reason of the fact that the crop of peas had been grown upon it; but he would not have had the benefit, if any, that resulted from their rotting in the field, and, to that extent only, can the question of fertilization of the soil be considered.

The case has not been so developed as to enable this court to estimate with any degree of certainty the excess of damages which might be cured by a remittitur, and therefore we have concluded that the judgment should be reversed, and the cause remanded for another trial; and it is so ordered.

Reversed and remanded.