**DE KALB HYBRID SEED COMPANY,**
Appellant,

v.

**W. C. AGEE, Appellee.**

No. 6029.

Court of Civil Appeals of Texas.

Beaumont.

April 26, 1956.

Rehearing Denied June 20, 1956.

A. K. Stewart, Conroe, for appellant.

J. Robert Liles, Conroe, for appellee.

R. L. MURRAY, Chief Justice.

The appellee, Agee, recovered judgment in the district court of Montgomery County against appellant DeKalb Hybrid Seed Company, for damages resulting from the sale to him of diseased baby chicks by appellant. Appellant has duly perfected its appeal from that judgment.

Agee was engaged in the business of chicken raising and the production and sale of eggs. He desired to purchase some chicks as replacements for his laying hens, and after reading the advertising pamphlet of appellant and on the recommendation of a friend who sold him feed, he purchased 500 chicks from appellant through its local agent, the Montgomery County Farmers' Co-Op. Association. The pamphlet contained many descriptions and pictures of appellant's chickens offered for sale, and also contained this statement: "Will you be ready for them? DeKalb chicks come to you as well-bred, healthy chix—backed by years of outstanding research work by De-Kalb's Poultry Breeders. However, they alone can't do the best job. You must provide sanitary housing, good equipment, and isolation, along with the right feed, and clean, fresh water." The pamphlet also contains the following: "These chix were healthy when you got them—keep them

that way." Agee relied upon the representation that DeKalb chicks were strong, healthy chicks in deciding to buy the 500 chicks. They were hatched on a Sunday, and delivered to Agee on Monday morning. He discovered on delivery that something was wrong with the chicks, but did not know what the trouble was. There was sufficient evidence introduced to show that the chicks were sick with infectious bronchitis, that this is an airborne disease, and is easily communicable to other chickens. Soon the disease spread to the older hens in Agee's flock, and as a result 101 hens died and the others became unprofitable as layers and were sold. 77 of the chicks died.

Appellant had a printed order form for its chicks, and Agee signed one in giving his order. The order contained the statement that "no warranty express or implied is given by the dealer or producer as to quality, productiveness or any other matter relating to any chicks sold." The order form also contained a clause whereby the appellant's liability in no case should exceed the purchase price of the chicks.

The appellant, as defendant in the trial court, made numerous exceptions to the appellee's petition, and also presented a number of objections to the charge of the court, all of which are based upon the appellant's contention throughout the course of the lawsuit and in this appeal that its liability in any event was limited to the purchase price of the chicks, and that the appellee had neither pleaded nor proved a cause of action against it because of negligence or fraudulent representations that the chicks were well and free from disease.

In answer to these special issues submitted in the court's charge the jury found by its verdict that (1) appellant, by means of advertisements and pamphlets, represented that its chicks would be healthy when received by any purchaser thereof; (2) that appellee Agee relied upon such representations when he purchased the chicks; (3) that in this particular instance such representations were false; (4) that such representations were material to the transaction involved; (5) that the appellee was induced to make the purchase of the baby chickens by reason of such representations; (6) that appellee has suffered damages as a result of such false representations; (7) that the appellant was guilty of shipping diseased chickens to appellee; (8) that the guilt of the appellant in shipping diseased chickens to appellee was negligence; (9) that such negligence was a proximate cause of appellee's damages sustained; (10) that the appellant delivered to appellee baby chickens which were infected with a dangerous and infectious disease; (11) that such act was negligence; (12) that such negligence was a proximate cause of damages to appellee; (13) that the sum of $2,187.38 would compensate the appellee for the damages suffered. In arriving at the answer to the above Special Issue No. 13 the jury verdict allotted the following amounts for the various items of damage: (1) the reasonable market value of 101 productive hens which died $252.50; (2) the difference in the reasonable cash market value of 774 hens sold as non-productive hens and the reasonable cash market value of such hens as productive hens $1,253.88; (3) reasonable and necessary expense in feeding and caring for appellee's grown flock $346.80; (4) the reasonable value of appellee's services in feeding and caring for such chickens $300; (5) the reasonable cash market value of medicine purchased and used in the treatment of the chickens $34.20.

The jury also answered Special Issues Nos. 14, 15 and 16 to the effect that appellee's acts in placing the baby chicks near the other chickens after he believed the chicks were sick was not negligence and placing the chicks near the other chickens was not the proximate cause of the damages suffered by appellee; that appellee did not believe the chicks were sick at the time they were delivered to him.

The appellant brings its appeal under 20 Points of Error, but they are pre-

sented in its brief in three groups. The first group of Points Nos. 1 through 11 are presented together. These raise the contentions of the appellant, in various ways, that the appellant's liability was limited under the terms of the written contract between the parties to the purchase price of the chicks, that the appellee's petition did not allege any specific acts of negligence on the part of the appellant and that no negligence was pleaded or proved against the appellant. We have examined the statement of facts and the material portions of the transcript, and have concluded that the appellant is correct in its contentions in so far as they relate to negligence. Without going into any detailed statement of the pleadings and evidence in regard thereto, we find that the pleadings did not set forth any specific act of negligence complained of and the evidence is insufficient to show any negligence on the part of the appellant. We believe this is harmless error, however, and presents no ground for reversal of the trial court's judgment, because the liability of the appellant is upheld below in this opinion upon a ground wholly unrelated to negligence.

By its 12th, 13th, 14th, 15th and 16th points, presented together in its brief, the appellant contends that the representations contained in its advertisements and pamphlets could constitute no basis for a suit for damages because of such representation in that such representation does not constitute fraud. It says that a false representation in order to authorize relief on the ground of fraud must be of a past or existing fact and not a promise of something to be done in the future, even though the promise without excuse is subsequently broken. It says that the statement in the pamphlet that its chickens would be healthy when received was not a statement or representation of a past or present material fact, that it was only a promise to do something in the future, which promise is loose, vague and indefinite, that it contained no offer but only invites negotiation. It further says that even if it is a false promise

to do something in the future, then such a promise must be made with no intent to perform in order to be fraudulent.

The appellee answers these contentions by asserting that under the circumstances here shown he had a choice of remedies, that is, he could bring action to rescind the contract or he could affirm the contract and recover his consequential damages. He elected to pursue the latter course. We believe the appellee is correct on the authority of Blythe v. Speake, 23 Tex. 429; Rumely Products Co. v. Moss, Tex.Civ.App., 175 S.W. 1084. The latter case is also authority for holding that the appellee's measure of damages is not limited to the purchase price of the chicks as was written in the contract of sale, but that he could recover his damages arising naturally from the act of the appellant in shipping him diseased chicks after representing that they would be healthy. In Trinity-Universal Ins. Co. v. Maxwell, Tex.Civ. App., 101 S.W.2d 606 and Andrews v. Powell, Tex.Civ.App., 242 S.W.2d 656 similar holdings are to be found.

In the case of Wintz v. Morrison, 17 Tex. 372, is found a discussion of the question of consequential damages arising from sales where there is fraud in the sale on the part of the seller. In the course of the opinion the court quotes from an older case in New York, Jeffrey v. Bigelow, 13 Wend. 518, with approval, holding that when a seller sold the buyer diseased sheep and the disease was communicated to the buyer's other sheep, then his claim for damages was not limited to the loss of the sheep purchased but extended to the other sheep which became diseased.

In the instant case since the chicks sold were hatched one day and delivered to the appellee the next, it is clear that the appellant did not know that the chicks were diseased. However, in Alexander v. Walker, Tex.Civ.App., 239 S.W. 309, 314, the court in dealing with the case involving the sale of diseased cattle held: "They may not

have known at the time the cattle were sold that they had incipient Texas fever, but if they represented to appellee that they were sound cattle when they were diseased cattle, appellee, nevertheless, if he relied upon that statement as he said he did in making the purchase, had the right of rescission." It appears therefore that in this case if appellee had the right to rely upon the representation of the appellant that the chicks would be sound and healthy and did rely upon such representation when he bought the chicks, then the appellant is liable to him not only for the loss of the chicks themselves which died but for all the consequential damages which in the ordinary course of events could be expected to flow from its act of selling and delivering him diseased chicks.

■ In passing upon the question whether the representations made by the appellant in its pamphlet and advertising in regard to its chicks which it offered for sale can be considered to be representations which would give rise to an action of fraud or misrepresentations, we find no authority in our jurisdiction directly upon that point. Neither the appellant nor the appellee has presented any such authority to us. The appellant, however, cites, as persuasive authority, numerous decisions from other states which hold that advertisements of a seller under some circumstances may be a part of the contract of sale, so as to entitle the purchaser to damages for false representations in such advertisements relied upon by the purchaser to his injury. These are Meyer v. Packard-Cleveland Motor Co., 106 Ohio St. 328, 140 N.E. 118, 28 A.L.R. 986; Latham v. Shipley, 86 Iowa 543, 53 N.W. 342; Economy Hog & Cattle Powder Co. v. Compton, Ind.App., 132 N.E. 642; Wilcox v. Henderson, 64 Ala. 535; Robson v. Miller, 12 S.C. 586; Keystone Mausoleum Co. v. Salzman, 72 Pa.Super. 437; Kitchin v. Oregon Nursery Co., 65 Or. 20, 130 P. 408, 1133, 132 P. 956; Hicks v. Stevens, 121 Ill. 186, 11 N.E. 241; Ralston Purina Co. v. Cox, 141 Neb. 432, 3 N.W.2d

748. The gist of these decisions is that in a case in which the matters stated in the advertisements were presented and distributed with the intention of inducing others to purchase and where it actually did influence decisions to purchase, then it was in the nature of a representation and intended to establish in implied warranty of the truth of such representations. We agree with the appellee's view of the matter and hold that under the circumstances in this case appellee was materially induced to buy the chicks from appellant by the representations in the advertising pamphlet that the chicks sold would be healthy when received. The appellee had the right to rely upon such statements, and the evidence shows that he did so rely upon it. The evidence is unquestioned that the chicks were diseased, and the evidence is sufficient to show that the appellee suffered considerable damages in consequence of the delivery to him of such diseased chicks.

■ By its 17th point the appellant complains of the trial court's action in overruling its objection to Special Issues Nos. 7, 8, and 9 of the court's charge. It says that these charges and the wording thereof constitute comments by the court on the weight of the evidence in that they assume the existence of material and controverted facts. Special Issue No. 7 inquired: "Do you find from a preponderance of the evidence that the defendant was guilty of shipping diseased chickens to the plaintiff? Answer Yes or No." Appellant says that by this issue the trial court tells the jury that it was guilty of shipping diseased chickens to appellee. We do not so view it. While we do not approve of the use of the word "guilty" as used in the Special Issue, still that does not seem to be the portion of the charge objected to by the appellant. As we see it, the Special Issue merely inquired whether the jury found from a preponderance of the evidence that the appellant shipped diseased chicks to the appellee. This did not constitute a comment on the weight of the evidence. The other Special

Issues 8, 9, 10, and 11 are submitted conditionally upon an affirmative answer to each preceding question, and such issues contain the saving phrases "if you have so found," "if any," and "if it did". We do not believe the issues were subject to the objection made that they stated that certain contested facts were true. Special Issues Nos. 8 through 11 deal with the question of negligence of the appellant, and since we have already indicated that we find no sufficient pleading nor evidence in regard to negligence, this point presents no reversible error.

Appellant's 18th, 19th, and 20th points incorporate its objections to Special Issues Nos. 7, 8, 9, 10 and 11 of the court's charge, which portions of the charge submitted issues inquiring into negligence and proximate cause. These points present no reversible error for the reason noted above that we find no pleading nor evidence in regard to the negligence of the appellant on which his liability could be based and we do not uphold liability on the ground of negligence.

The various complaints of the appellant as to the judgment against it have been briefed and grouped in connection with other complaints in such a way that it is difficult to separate one from the other. Under its first group of Points Nos. 1 through 11, we find the complaint of the appellant against Special Issue No. 13 of the court's charge. In this charge the court submitted the question of damages suffered by the appellee. Appellant complains that the court allowed recovery for the reasonable market value of 101 productive hens and that the number of productive hens that died was a disputed fact, both as to the number of hens and whether or not they were productive. It complains also that the court informed the jury that 774 hens were rendered non-productive and this is a disputed fact, both as to the number of hens and whether they were productive. This contention is overruled. The only testimony in the record as to how many chickens died and how many Mr. Agee sold and how much money was received from them, and how much they were worth as producing hens all came from the appellee and his wife. He testified that he sold 550 hens at one time for 88 cents a hen. He sold all of his hens. At one time he said about a hundred hens died and at another time he said a little over a hundred. Mrs. Agee, wife of the appellee, testified that she received $681.12 from the sale of all the grown hens. Since the undisputed evidence was that the hens were sold for an average price of 88 cents each, it seems to be unquestioned that appellee sold 774 hens. There was no controversy anywhere in the lawsuit by the appellant as to the number of hens sold or the price received for them, or as to the number of hens that died. We do not think it was error for the trial court to assume in his charge that this was an uncontroverted fact. There was nothing elsewhere in the evidence to cast any suspicion upon the correctness of the figures advanced by Mr. and Mrs. Agee. The trial judge had the right to decide whether this evidence should be taken as uncontradicted. See: Golden v. First State Bank, Tex.Civ.App., 38 S.W.2d 628; M. H. Thomas & Co. v. Hawthorne, Tex.Civ.App., 245 S.W. 966. The appellant's contention is overruled.

We have considered the entire record in this case and find no reversible error. The judgment is accordingly affirmed.

## On Motion for Rehearing

Appellant in its motion for rehearing questions the applicability of the case of Rumely Products Co. v. Moss, Tex.Civ. App., 175 S.W. 1084, 1087 to this case. We cited that case as authority for holding that the appellee's measure of damages was not limited by a clause in the written contract of sale between the appellant and the appellee, which clause limited the appellee to the price paid for the chickens as his damage for any breach of the contract.

As we view the matter, the appellee did not bring his action for breach of such written contract of sale, but for the antecedent fraudulent representations by the appellant which induced him to enter into such contract of sale and buy chickens which spread disease throughout his flock to cause him damage. His action was for the fraudulent representations and the damages suffered by him as a consequence thereof. We believe that the following quoted portion of the opinion in Rumely Products Co. v. Moss, supra, supports our view:

"It is earnestly insisted in appellant's brief that the measure of the plaintiff's damages is limited and restricted by the written contract of warranty, and that the plaintiff was not entitled to recover the market value of his crop of peas, even though as a result of appellant's breach of the contract he may have lost the entire crop. Controverting that contention, counsel for appellee submits the following counter proposition:

" 'Where a plaintiff, by false representations, was induced to purchase machinery which was sold on written contract containing certain warranties in a suit against the seller for damages, the plaintiff is not restricted to an action on the written contract, but can base his suit on antecedent fraud by which the contract was procured.'

"In support of that contention Jones v. George, 61 Tex. 345, 48 Am.Rep. 280, Cobb v. O'Neal, 2 Sneed 438, 34 Tenn. 438; Blythe v. Speake, 23 Tex. 429, and 14 Cyc. 29 and 30, are cited. We sustain the contention urged on behalf of appellee, and hold that the measure of damages in this case is not limited to the remedies stipulated in the written contract * * *."

We have considered all the matters raised in appellant's motion for rehearing, and believe them to be without merit. The motion is overruled.