W. S. ALEXANDER, Appellant,

v.

Earl BYRD et al., Appellees.

No. 3350.

Court of Civil Appeals of Texas.

Eastland.

Jan. 24, 1958.

Rehearing Denied Feb. 14, 1958.

Callaway & Callaway, Brownwood for appellant.

Woodruff & Holloway, Bill Allcorn, Dist. Atty., Brownwood, Walter K. Boyd, Jr., County Judge, Coleman, for appellees.

WALTER, Justice.

Earl Byrd filed suit against W. S. Alexander and William S. Evans in the District Court of Brown County to recover damages sustained by him in connection with his purchase of 585 head of sheep from Alexander which were alleged to have been infested with the disease of scabies. Byrd contended that Alexander represented the sheep to be free of disease and that he relied on such representations in his purchase of the sheep. Byrd pleaded in the

alternative that Alexander acted as agent for Evans and that Alexander and Evans were jointly and severally liable for such damages. Byrd alleged the diseased sheep were placed in his pastures with other sheep owned by him which were exposed to the disease and that all of his sheep were placed under a ninety day quarantine by the Texas Livestock Sanitary Commission. Byrd pleaded that the actual purchase price of the 585 head of sheep was $17 per head but that such diseased sheep had a market value of only $5 per head and, in the alternative, if they had no market value, then the actual or intrinsic value was $5 per head. Byrd further asserted that he owned 667 head of sheep in Brown and Coleman Counties and 449 in Crockett County that were exposed to the diseased sheep purchased from Alexander and that on account of such exposure their market value had been reduced $12 per head. Byrd further contended that the reasonable and necessary cost of dipping, doctoring and caring for the quarantined sheep was $1,305.

Alexander sued Byrd for $9,945 and for foreclosure of his chattel mortgage on the sheep, and the First National Bank in Brownwood and John T. Yantis for conversion of the mortgage property or the proceeds from the sale thereof in the District Court of Comanche County, which case was transferred to Brown County and consolidated with the case filed by Byrd against Alexander and Evans.

Based on the verdict, the court rendered judgment for Alexander in the sum of $6,624.01 against Byrd, being for the purchase price of the 585 sheep less the damages awarded Byrd by the jury and that Byrd be denied any recovery against Evans, and Alexander be denied any recovery against the bank and Yantis.

Alexander has appealed. He predicates his appeal on nineteen points of error. Three are directed to the action of the court in overruling his exceptions to Byrd's pleadings and one in overruling his motion for an instructed verdict. Ten points are directed to the action of the court in submitting certain special issues. Four points are based on the alleged error of the court in rendering judgment on the verdict. The remaining point asserts that the court erred in forcing appellant to testify on cross-examination by counsel for Yantis and the bank to certain impeaching matters.

■ Appellant's point number one is directed to the alleged error of the court in overruling his special exception number two, which is as follows:

"If Defendant's above special exception should be overruled, then Defendant Alexander specially excepts to section VII, and all parts of said pleading wherein it is stated that by reason of the disease with which said 585 sheep were suffering their market actual or intrinsic value was reduced to the extent of $12 per head, for the reason that said fact would be immaterial, since it affirmatively appears, from all of said pleadings, that said infection was easily controlled and eradicated by the treatment, and said sheep entirely cured, and the only injury that was suffered by the Plaintiff was the cost of such treatment, which Plaintiff has alleged to be the sum of $450, and which Defendant alleges to be $58.50, and Defendant asks that all of such allegations be stricken, as being improper measure of damage, and an attempt to recover double damage."

This exception was filed on January 30, 1957, and overruled on February 4, 1957, and on February 6, 1957, Byrd filed a trial amendment amending paragraph seven by adding additional allegations concerning the market value of his sheep. Appellant's point number one is overruled because the allegations in the pleadings excepted to are material and set forth the correct measure of damages. The applicable measure of damages in a case of this kind is discussed by our Supreme Court in Morriss-Buick Co. v. Pondrom, 131 Tex. 98, 113 S.W.2d 889, 890;

"The question has been the subject of much contrariety of opinion, both in and out of Texas. See 27 C.J. pp. 96, 97, 98, 99, and footnotes. The rule in Texas is stated in 27 C.J. p. 98 as follows: 'In Texas it has been held by the supreme court that, where one is induced by fraud to enter into a contract to his loss, the measure of his damages is the difference between the value of what he parted with and what he received under the contract, such difference being regarded as the only actual loss involved and the difference between the real and represented value being regarded as too speculative to furnish a correct measure of damages.' "

The Morriss-Buick Co. case was followed by this court in Stuart v. Birdwell, Tex.Civ. App., 264 S.W.2d 452.

■ In the appellant's next point he complains of the court's action in overruling another exception to the same paragraph of appellee's pleadings for the same reasons set forth under his first point and for the further reason that such damages would be in the nature of special damages and that the appellee's pleadings were insufficient. Appellant specially excepted to that portion of Byrd's pleadings that asserted a damage of $12 per head for reduced market value of the sheep already owned by him at the time of his purchase of the diseased sheep. We cannot agree with appellant's contention because Byrd set forth in his first amended petition and in his trial amendment adding to paragraph seven thereof in plain and concise language that he was not only claiming damages from the appellant for the 585 head of sheep purchased, but that he was also claiming damages on account of his other sheep being exposed and quarantined. De Kalb Hybrid Seed Co. v. Agee, Tex.Civ.App., 293 S.W. 2d 64, 67 (RNRE), is authority for the proposition that Byrd is entitled to recover for such consequential damages to the sheep already owned by him at the time of such purchase.

"We believe that appellee is correct on the authority of Blythe v. Speake, 23 Tex. 429; Rumely Products Co. v. Moss, Tex.Civ.App., 175 S.W. 1084. The latter case is also authority for holding that the appellee's measure of damages is not limited to the purchase price of the chicks as was written in the contract of sale, but that he could recover his damages arising naturally from the act of the appellant in shipping him diseased chicks after representing that they would be healthy. In Trinity-Universal Ins. Co. v. Maxwell, Tex.Civ.App., 101 S.W.2d 605 and Andrews v. Powell, Tex.Civ. App., 242 S.W.2d 656 similar holdings are to be found.

"In the case of Wintz v. Morrison, 17 Tex. 372, is found a discussion of the question of consequential damages arising from sales where there is fraud in the sale on the part of the seller. In the course of the opinion the court quotes from an older case in New York, Jeffrey v. Bigelow, 13 Wend. 518, with approval, holding that when a seller sold the buyer diseased sheep and the disease was communicated to the buyer's other sheep, then his claim for damages was not limited to the loss of the sheep purchased but extended to the other sheep which became diseased."

■ Appellant in his next point contends that his special exception to Byrd's pleading of damages alleged to have been suffered by him in caring for, treating and dipping his sheep should have been sustained. It is true that some of these allegations were "merely the conclusions of the pleader", but under Texas Rules of Civil Procedure rule 45 this is not objectionable unless it is shown that the appellant has not had fair notice of the facts upon which the pleading is based. It is our

opinion that Byrd's pleadings sufficiently informed appellant of the facts. That Byrd is entitled to recover for the expenses incurred by him in caring for, treating and dipping said sheep is supported by the case of St. Louis Southwestern Ry. Co. of Texas v. Chambliss, Tex.Civ.App., 54 S.W. 401, and from said opinion we quote the following:

"If, however, the injury was such that it did not clearly appear that the mule was rendered worthless, but its condition was such that a reasonably prudent man would have had reason to believe that by proper care the mule could be cured or rendered serviceable, then such time, labor, or expense reasonably expended for that purpose would be recoverable, in addition to the market value of the mule, though the injury may have rendered it worthless."

■■ An instructed verdict is warranted only when the evidence is such that no other verdict could be rendered. The court below was warranted in refusing appellant's motion for an instructed verdict.

Appellant's next points concern the alleged error in submitting certain special issues to the jury. These issues are substantially as follows: Did appellant sell the sheep to Byrd? Did Alexander represent that they were sound, healthy sheep? Was Byrd induced to purchase by reason of said representations? Did Byrd rely on such representations? Were the representations untrue? These issues were answered favorably to Byrd. The jury further found in answer to special issues objected to by appellant that Byrd spent $800 in gathering and dipping his sheep, which was a reasonable and necessary amount required for this purpose; that the 585 ewes in question, after they had been dipped and completely recovered, had a cash value in Brown County of $14 per head; that 300 of the 580 ewes owned by Byrd were dry after they were dipped; that the cash market value of the 580 ewes owned by Byrd at the time the 585 ewes in question were delivered to Byrd was $14 per head; that the cash market value in Brown County of the 300 ewes owned by Byrd after they had been dipped and completely recovered was $8 per head. The number of rams owned by Byrd at the time of the dipping, their cash market value before the dipping and their cash market value after the dipping were issues also submitted to the jury and objected to by appellant to which the jury answered that Byrd had 22 rams, their value before was $25 and after $20. Other special issues submitted and objected to by the appellant were the value of 65 yearling ewes owned by Byrd before and after the dipping, to which the jury answered $16 before and $14 after.

The jury found in answer to other issues not objected to by the appellant that at the time Byrd purchased the 585 ewes they were infested with scabies; that the sheep Byrd owned at the time of the purchase of the diseased sheep were free from scabies and that Byrd's other sheep became infested with scabies when exposed to the 585 ewes purchased from Alexander.

Another of appellant's points complains of the action of the court in rendering judgment on the jury's verdict. Appellant's objections to the special issues are substantially that the court wrongfully assumes that appellant owned the sheep; that said issues are not properly raised by the pleadings nor supported by the evidence and there were no pleadings or proof of the market value sufficient to justify the submission of said issues to the jury.

In reply to Byrd's pleadings appellant expressly denied that he sold the 585 ewes to Byrd; that he acted for Evans or that he either individually, or as agent for Evans, represented to Byrd that the sheep were free of disease. All of the facts inquired about were controverted matters that the parties had placed in issue by pleadings and evidence.

The sheep sold to Byrd had previously been sold by appellant to Buck Evans, who gave his note to appellant for the purchase price. Byrd testified that Alexander had become dissatisfied with the sale to Evans and since they had not been delivered or paid for, wanted to take them back from Evans and sell them to him. Byrd testified that Alexander said, "If you will buy them, Earl, I will sell them to you on credit, just like I sold them to Buck."

Pierce Hoggett, a rancher and also a supervisor of the scab eradication work with the Texas Livestock Commission, testified that he had known the appellant and Byrd for many years. He further testified that after this scab condition was reported to him, he contacted Byrd who told him that he had purchased the sheep from appellant, and that appellant admitted to him that he had sold them to Byrd. Weldon Joyce testified that he had talked to Buck Evans about the 585 head of sheep and Buck Evans told him that appellant sold them to Byrd. Appellant testified that he dictated a note and Buck Evans wrote it and appellant signed same, which note is as follows: "This is your authority to deliver Earl Byrd 585 yearling ewes on which I have a mortgage, same to be paid for October 1, 1954, at $17 per head and the amount credited on your note." Appellant further testified that Mr. Yantis, or someone at the First National Bank, where the note was being held, did place such a credit on the Evans' note. He further testified that he wasn't looking to Buck Evans for one cent of the purchase price of the 585 ewes, but that he was looking to Byrd for payment. Yantis testified that appellant told him he was taking the sheep back from Evans and selling them to Byrd at $17 per head and instructed him to prepare a note for Byrd to sign and at such time informed him that he was not taking a mortgage on the sheep but that Byrd was going to secure him with a life insurance policy. He further testified that appellant also instructed him to credit Evans' note. The note that was prepared by Yantis was introduced in evidence by appellant as defendant's exhibit number 4 and the judgment appealed from awards him a money judgment against Byrd for the purchase price of the sheep, less the amount of damages awarded to Byrd. Byrd testified that he bought the sheep from appellant at $17 per head and executed his note in payment for said sheep. He further testified to a conversation that he had with the appellant as follows: "He said, 'Have you thought about that?' I said, 'You bet.' He said, 'I wish I hadn't sold them to you.' I said, 'I do, too.'" Byrd further testified that appellant told him not to say anything about it and that he would do what was right.

We hold that the court did not err in submitting these special issues. They were properly raised by the pleadings and supported by the evidence. We also hold that the court rendered a proper judgment on the verdict.

█ The appellant's remaining points concern an alleged error pertaining to the First National Bank in Brownwood and John T. Yantis. Appellant alleged he had a mortgage on the sheep. He alleged that on or about the 29th day of October, 1954, Byrd executed to the bank a note for $10,393, secured by a chattel mortgage lien on the 585 head of sheep in question; that said sheep had been sold by Byrd and the proceeds delivered to the Bank and Yantis, or that in some other manner the bank had converted the proceeds of said sale. The bank and Yantis pleaded in effect, that appellant informed Yantis he was taking the sheep back from Evans and selling them to Byrd and that he requested Yantis to prepare a note for Byrd to sign and appellant informed them that he was not taking a mortgage on said sheep. Said appellees also pleaded that they had never had possession or control of any of the sheep. The record reflects that Byrd's note to the bank was paid in different amounts on May 4, 1955, May 6, 1955, and June 6, 1955. Lee

Perkins testified that he knew of the 585 head of sheep that Alexander sold to Byrd and that he purchased all of this flock of sheep, that had not died, in July, 1955.

The jury found that appellant knowingly advised Yantis to prepare a note without a mortgage and that he was not retaining a lien against the sheep. We hold that appellant failed to prove conclusively or secure findings supporting his claim of conversion against the bank and Yantis. Appellant's point complaining of the action of the court in compelling him to testify on cross-examination by counsel for the bank and Yantis to certain impeaching matters. is without merit because it appears that this matter had to some extent been brought out on direct examination. But, in any event, it did not amount to such a denial of the rights of appellant as was reasonably calculated to cause, and probably did cause, the rendition of an improper judgment. Texas Rules of Civil Procedure, Rule 434.

The judgment is affirmed.